**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

**PHI HEALTH, LLC**

Plaintiff,

v.

**ANTHEM HEALTH PLANS OF VIRGINIA, INC., HEALTHKEEPERS OF VIRGINIA, INC ADVANCE STORES COMPANY, INC.; ALLIED UNIVERSAL CORPORATION; AMAZON, INC.; AUTONATION, INC.; BEST BUY CO., INC.; BRYAN TOOL AND MACHINING, INC.; CARGILL, INC.; COADVANTAGE RESOURCES, INC.; COMMISSIONING AGENTS, INC.; FRANKLIN ELECTRIC CO., INC.; G&B HOLDINGS, INC.; HII MISSION TECHNOLOGIES CORP.; JPB HOME SERVICES LLC; K & K FOUNDATION SEALING, INC.; KING GEORGE COUNTY SCHOOLS; NVR, INC.; SPOTSYLVANIA COUNTY SCHOOLS; TEAMSTERS JOINT COUNCIL NO. 83 OF VIRGINIA HEALTH AND WELFARE FUND; TOWN OF BRIDGEWATER; TRAYLOR BROS., INC.; UNIVERSAL DYNAMICS, INC. D/B/A PIOVAN UNADYN; VERIZON VIRGINIA LLC; VIRGINIA DEPARTMENT OF TRANSPORTATION; AND WALMART, INC. AND HEALTH AND WELFARE BENEFIT PLANS SPONSORED BY THEM,**

Defendants.

Case No. 3:26-cv-876

## COMPLAINT

Plaintiff PHI Health, LLC ("PHI") files this Complaint against Anthem Health Plans of Virginia, Inc. and HealthKeepers of Virginia, Inc. ("Anthem"), Advance Stores Company, Inc.;

Allied Universal Corporation; Amazon, Inc.; AutoNation, Inc.; Best Buy Co., Inc.; Bryan Tool and Machining, Inc.; Cargill, Inc.; CoAdvantage Resources, Inc.; Commissioning Agents, Inc.; Franklin Electric Co., Inc.; G&B Holdings, Inc.; HII Mission Technologies Corp.; JPB Home Services LLC; K & K Foundation Sealing, Inc.; King George County Schools; NVR, Inc.; Teamsters Joint Council No. 83 of Virginia Health and Welfare Fund; Spotsylvania County Schools; Town of Bridgewater; Traylor Bros., Inc.; Universal Dynamics, Inc. d/b/a Piovan UnaDyn; Verizon Virginia LLC; Virginia Department of Transportation; and Walmart, Inc. ("Sponsors"), and the health and welfare benefits plans sponsored by them ("Plans") (with Anthem, Sponsors, and Plans being collectively referred to as "Defendants") for the failure to pay overdue awards issued pursuant to the No Surprises Act ("NSA").

## I. INTRODUCTION

1. Defendants are violating the NSA. Congress created the Independent Dispute Resolution ("IDR") process as a streamlined method to resolve payment disputes between out-of-network providers of air-ambulance services and commercial health insurers.[1]

2. The IDR process is an arbitration in which a private arbitrator (known as an "IDR entity") issues a written determination selecting the amount due to the provider by a patient's commercial health insurer.

3. The NSA mandates that IDR determinations "shall be binding upon the parties" to the dispute and that payment by the plan or issuer "shall be made directly to the nonparticipating provider not later than 30 days" after the determination. These provisions create a money-mandating obligation and a right for providers to enforce that obligation.

---

[1] This Complaint uses the shorthand "commercial health insurer" to reference all types of payors covered by the No Surprises Act, including individual health insurance issuers; group health insurance issuers; and self-insured group health plans, including employee welfare benefit plans subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

4. Defendants have refused to comply with this mandatory obligation. More than 30 days—and in many cases many months—have passed since issuance of the IDR determinations at issue here; yet Defendants have not paid.

5. Without judicial enforcement, these "binding" awards would be rendered meaningless to providers, and Defendants could ignore their statutory payment obligation.

6. This case seeks only enforcement—not review—of binding IDR determinations under the NSA, or alternatively, confirmation under the Federal Arbitration Act ("FAA") and/or the Virginia Arbitration Act. PHI does not ask this Court to revisit the merits of any IDR award.

7. Anthem has systematically late-paid or failed to pay air ambulance operators tens of millions of dollars in IDR awards, including, nationwide, nearly $30M on over 1,200 unpaid IDR determinations owed to PHI. Anthem's systemic failures and delays – or outright refusals – in paying the IDR Awards constitute unfair and deceptive business practices and reflect a broader pattern and practice of non-compliance with federal law. On information and belief, Anthem has further encouraged and/or directed its clients, Plans, and Sponsors to disregard the NSA's mandatory payment obligations. On information and belief, this unlawful scheme to "low pay, late pay, or no pay" providers nationwide, including PHI, is designed not only to delay and avoid mandatory payment obligations, but also to generate financial benefit from the retention and use of funds owed to providers and to exert economic pressure on providers. By delaying payment of binding IDR awards, Anthem, as well as the plans it insures and administers, reduces its costs through non-payment or retains and earns interest or investment income on millions upon millions of dollars that were not timely paid. In addition to Anthem's systemic failure – or outright refusal – to comply with its statutory obligation to timely pay IDR determinations, Anthem uses chronic underpayment, nonpayment and delayed payment practices to pressure providers, like PHI, to

accept unreasonably low, below-market network agreements at below-market rates or accept arbitrarily low payment for their out-of-network services in order to avoid the administrative and financial burden of repeated IDR proceedings. In fact, Anthem reduced an in-network rate offer it made to PHI in September 2025 by 39.6% for procedure code A0436 (mileage charge) and 15.3% for procedure code A0431 (base or "lift-off" charge) after it systematically approached complete non-payment of PHI's federal IDR determinations nationwide.

8. These practices cause substantial injury and violate the law. They deprive providers of adjudicated reimbursement, force providers to incur unnecessary administrative costs, pressure providers to accept below-market network rates, and undermine the financial stability of providers of emergency healthcare subject to the NSA. This, in turn, undermines the value of the commercial health insurance products sold to consumers and threatens access to critical healthcare services, especially in the rural communities PHI serves. These practices violate established public policy and are immoral, unethical, oppressive, and unscrupulous. They directly and substantially injure consumers by undermining the availability of emergency and air ambulance services, diminishing the accessibility and timeliness of care, and impairing the quality and affordability of essential healthcare services.

9. PHI therefore brings this action, pursuant to the NSA, the FAA and/or Virginia Arbitration Act, and the Employee Retirement Income Security Act ("ERISA"), seeking (a) entry of judgment confirming the IDR Awards; (b) an award to Plaintiff of $854,038.44 (the "IDR Award Balances") plus pre-judgment and post-judgment interest; and (c) equitable relief enforcing such obligations; together with such other relief as the Court deems appropriate.

## II. PARTIES

### Plaintiff

10. Plaintiff PHI Health, LLC is a limited liability company organized under the laws of the State of Louisiana and headquartered in Tempe, Arizona.

### Anthem

11. Defendants Anthem Health Plans of Virginia, Inc. and HealthKeepers of Virginia, Inc. (collectively, "Anthem"), function as either a health insurance issuer that is licensed and regulated by the Virginia Department of Insurance or as a Third-Party Administrator ("TPA") of self-funded health and welfare benefit plans regulated by ERISA. Defendants' role as insurer or TPA is designated on Exhibit A.[2] Anthem Health Plans of Virginia, Inc. and HealthKeepers of Virginia, Inc. are Virginia corporations that are headquartered in Richmond, Virginia. Anthem may be served with process through CT Corporation System, at 4701 Cox Road, Ste 285, Glen Allen, VA, 23060 - 6808.

12. In its role as TPA, Anthem, upon information and belief, is a fiduciary of the Plans, and is the authorized agent of each and every other Defendant named in this complaint. Anthem's receipt of notice of this lawsuit and the underlying arbitration was valid notice to all other Defendants, and Anthem's participation in the IDR process was on behalf of all other Defendants. Anthem has been served and has appeared in this case.

### Sponsors and Plans

13. Defendant Advance Stores Company, Inc. ("Advance Stores") is a corporate entity organized under the laws of the State of Virginia and authorized to do business in Virginia.

---

[2] Claims with * lacked sufficient information for PHI to determine whether the plans are governed by ERISA and, if so, the identity of the plan sponsor. PHI reserves the right to amend when this information is identified.

Advance Stores serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Advance Auto Parts Welfare Benefits Plan (the "Advance Stores Plan"). Advance Stores is thus a representative and fiduciary of the Advance Stores Plan and is sued here in that capacity. Advance Stores and Advance Stores Plan may be served with process by serving Corporation Service Company at 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

14. Defendant Allied Universal Corporation ("Allied") is a corporate entity organized under the laws of the State of Delaware and authorized to do business in Virginia. Allied serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Allied Universal Health and Welfare Benefits Plan (the "Allied Plan"). Allied is thus a representative and fiduciary of the Allied Plan and is sued here in that capacity. Allied and Allied Plan may be served with process by serving Corporation Service Company at 100 Shockoe Slip, Floor 2, Richmond, VA 23219-4100.

15. Defendant Amazon, Inc. ("Amazon") is a corporate entity organized under the laws of the State of Delaware and authorized to do business in Virginia. Amazon serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Group Health & Welfare Plan (the "Amazon Plan"). Amazon is thus a representative and fiduciary of the Amazon Plan and is sued here in that capacity. Amazon and Amazon Plan may be served with process by serving Corporation Service Company at 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

16. Defendant AutoNation, Inc. ("AutoNation") is a corporate entity organized under the laws of the State of Delaware and authorized to do business in Virginia. AutoNation serves as

a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the AutoNation, Inc. Health and Welfare Plan (the "AutoNation Plan"). AutoNation is thus a representative and fiduciary of the AutoNation Plan and is sued here in that capacity. AutoNation and AutoNation Plan may be served with process by serving Corporation Service Company, 100 Shockhoe Slip, 2nd Floor, Richmond, VA 23219.

17. Defendant Best Buy Co., Inc. ("Best Buy") is a corporate entity organized under the laws of the State of Minnesota and authorized to do business in Virginia. Best Buy serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Best Buy Health and Welfare Wrap Plan (the "Best Buy Plan"). Best Buy is thus a representative and fiduciary of the Best Buy Plan and is sued here in that capacity. Best Buy and Best Buy Plan may be served with process by serving C T Corporation System at 4701 Cox Rd, Suite 285, Glen Allen, VA 23060-6808.

18. Defendant Bryan Tool and Machining, Inc. ("Bryan Tool") is a corporate entity organized under the laws of the State of Virginia and authorized to do business in Virginia. Bryan Tool serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Bryan Tool and Machining Health and Welfare Benefits Plan (the "Bryan Tool Plan"). Bryan Tool is thus a representative and fiduciary of the Bryan Tool Plan and is sued here in that capacity. Bryan Tool and Bryan Tool Plan may be served with process by serving Timothy R. Bryan at 2970 Mayland Road, Broadway, VA 22815.

19. Defendant Cargill, Inc. ("Cargill") is a corporate entity organized under the laws of the State of Delaware and authorized to do business in Virginia. Cargill serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Cargill, Incorporated Welfare Benefit Plan (the "Cargill Plan"). Cargill is thus a representative and fiduciary of the Cargill Plan and is sued here in that capacity. Cargill and Cargill Plan may be served with process by serving United Agent Group Inc. at 425 W Washington St, Suite 4, Suffolk, VA 23434-5320.

20. Defendant CoAdvantage Resources, Inc. ("CoAdvantage") is a corporate entity organized under the laws of the State of Florida and authorized to do business in Virginia. CoAdvantage serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the CoAdvantage Resources Health and Welfare Benefits Plan (the "CoAdvantage Plan"). CoAdvantage is thus a representative and fiduciary of the CoAdvantage Plan and is sued here in that capacity. CoAdvantage and CoAdvantage Plan may be served with process by serving National Registered Agents, Inc. at 4701 Cox Road, Suite 285, Glen Allen, VA 23060.

21. Defendant Commissioning Agents, Inc. ("Commissioning Agents") is a corporate entity organized under the laws of the State of Indiana and authorized to do business in Virginia. Commissioning Agents serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Commissioning Agents, Inc. Welfare Benefit Plan (the "Commissioning Agents Plan"). Commissioning Agents is thus a representative and fiduciary of the Commissioning Agents Plan and is sued here in that capacity. Commissioning Agents and Commissioning Agents Plan

may be served with process by serving Cogency Global Inc. at 250 Browns Hill Court, Midlothian, VA 23114-9510.

22. Defendant Franklin Electric Co., Inc. ("Franklin Electric") is a corporate entity organized under the laws of the State of Indiana and authorized to do business in Virginia. Franklin Electric serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Franklin Electric Co., Inc. Employee Welfare Benefits Plan (the "Franklin Electric Plan"). Franklin Electric is thus a representative and fiduciary of the Franklin Electric Plan and is sued here in that capacity. Franklin Electric and Franklin Electric Plan may be served with process by serving Corporation Service Company at 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

23. Defendant G&B Holdings, Inc. ("G&B Holdings") is a corporate entity organized under the laws of the State of Virginia and authorized to do business in Virginia. G&B Holdings serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the G&B Holdings, Inc. Health and Welfare Benefits Plan (the "G&B Holdings Plan"). G&B Holdings is thus a representative and fiduciary of the G&B Holdings Plan and is sued here in that capacity. G&B Holdings and G&B Holdings Plan may be served with process by serving Gregory Friedman at 2820 Dorr Ave, Suite 220B, Fairfax, VA 22031.

24. Defendant HII Mission Technologies ("HII Mission") is a corporate entity organized under the laws of the State of Delaware and authorized to do business in Virginia. HII Mission serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the HII Mission Technologies Health and Welfare Benefits Plan (the "HII Mission Plan").

HII Mission is thus a representative and fiduciary of the HII Mission Plan and is sued here in that capacity. HII Mission and HII Mission Plan may be served with process by serving C T Corporation System at 4701 Cox Rd, Suite 285, Glen Allen, VA 23060-6808.

25. Defendant JPB Home Services LLC ("JPB Home") is a corporate entity organized under the laws of the State of Delaware and authorized to do business in Virginia. JPB Home serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the JPB Home Services LLC Health and Welfare Benefits Plan (the "JPB Home Plan"). JPB Home is thus a representative and fiduciary of the JPB Home Plan and is sued here in that capacity. JPB Home and JPB Home Plan may be served with process by serving Incorp Services, Inc. at 7288 Hanover Green Dr, Suite A, Mechanicsville, VA 23111-1709.

26. Defendant K & K Foundation Sealing, Inc. ("K&K") is a corporate entity organized under the laws of the State of Virginia and authorized to do business in Virginia. K&K serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the K&K Foundation Sealing Health and Welfare Benefits Plan (the "K&K Plan"). K&K is thus a representative and fiduciary of the K&K Plan and is sued here in that capacity. K&K and K&K Plan may be served with process by serving James Andrew Kent Jr. at 13715 Berry Hill Rd, Elkwood, VA 22718-1815.

27. Defendant King George County Schools ("King George") is a public body corporate organized under the laws of the Commonwealth of Virginia and responsible for the operation of the public schools of King George County. Upon information and belief, King George serves as the plan sponsor and administrator of a health and welfare benefits program for the

benefit of its employees and dependents called, upon information and belief, the King George County School Board Health and Welfare Benefit Plan (the "King George Plan"). King George is thus a representative and fiduciary of the King George Plan and is sued here in that capacity. King George and the King George Plan may be served with process by serving Dr. Jesse Boyd, Superintendent, 9100 St. Anthony's Road, King George, Virginia 22485.

28. Defendant NVR, Inc. ("NVR") is a corporate entity organized under the laws of the State of Virginia and authorized to do business in Virginia. NVR serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the NVR, Inc. Employee Health Benefits Plan (the "NVR Plan"). NVR is thus a representative and fiduciary of the NVR Plan and is sued here in that capacity. NVR and NVR Plan may be served with process by serving Corporation Service Company at 100 Shockoe Slip, 2nd Floor, Richmond, VA 23219.

29. Defendant Universal Dynamics, Inc. d/b/a Piovan UnaDyn ("Piovan") is a corporate entity organized under the laws of the State of Virginia and authorized to do business in Virginia. Piovan serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Piovan North America, Inc. Universal Dynamics Health and Welfare Benefits Plan (the "Piovan Plan"). Piovan is thus a representative and fiduciary of the Piovan Plan and is sued here in that capacity. Piovan and Piovan Plan may be served with process by serving Corporation Service Company at 100 Shockoe Slip, Floor 2, Richmond, VA 23219-4100.

30. Defendant Spotsylvania County Schools ("Spotsylvania") is a public body corporate organized under the laws of the Commonwealth of Virginia and responsible for the operation of the public schools of Spotsylvania County. Upon information and belief, Spotsylvania

serves as the plan sponsor and administrator of a health and welfare benefits program for the benefit of its employees and dependents called, upon information and belief, the Spotsylvania County School Board Health and Welfare Benefit Plan (the "Spotsylvania Plan"). Spotsylvania is thus a representative and fiduciary of the Spotsylvania Plan and is sued here in that capacity. Spotsylvania and the Spotsylvania Plan may be served with process by serving Dr. Clint M. Mitchell, Division Superintendent, 8020 River Stone Drive, Fredericksburg, Virginia 22407.

31. Defendant Teamsters Joint Council No. 83 of Virginia Health and Welfare Fund is an employee welfare benefit plan and trust arrangement that provides health and welfare benefits to eligible participants and beneficiaries. Upon information and belief, the Teamsters Joint Council No. 83 of Virginia Health and Welfare Fund (the "Teamsters No. 83 Plan") is administered by its authorized trustees and fiduciaries. Teamsters Joint Council No. 83 of Virginia Health and Welfare Fund is sued herein through those representatives in their fiduciary capacities. Teamsters Joint Council No. 83 of Virginia Health and Welfare Fund and the Teamsters No. 83 Plan may be served with process by serving Board of Trustees, Teamsters Joint Council No. 83 of Virginia Health & Welfare Fund at 8814 Fargo Road, Suite 200, Richmond, VA 23229.

32. Defendant Town of Bridgewater ("Bridgewater") is a municipal corporation organized under the laws of the Commonwealth of Virginia. Upon information and belief, Bridgewater serves as the plan sponsor and administrator of a health and welfare benefits program for the benefit of its employees and dependents called, upon information and belief, the Town of Bridgewater Health and Welfare Benefit Plan (the "Bridgewater Plan"). Bridgewater is thus a representative and fiduciary of the Bridgewater Plan and is sued here in that capacity. Bridgewater and the Bridgewater Plan may be served with process by serving Jason A. Botkins, Town Attorney, 201 Green Street, Bridgewater, Virginia 22812.

33. Defendant Traylor Bros., Inc. ("Traylor Bros.") is a corporate entity organized under the laws of the State of Indiana and authorized to do business in Virginia. Traylor Bros. serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Traylor Construction Group Employee Benefits Plan (the "Traylor Bros. Plan"). Traylor Bros. is thus a representative and fiduciary of the Traylor Bros. Plan and is sued here in that capacity. Traylor Bros. and Traylor Bros. Plan may be served with process by serving National Registered Agents, Inc. at 4701 Cox Road, Suite 285, Glen Allen, VA 23060.

34. Defendant Verizon Virginia LLC ("Verizon") is a limited liability company organized under the laws of the Commonwealth of Virginia and authorized to do business in Virginia. Verizon serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Verizon Mid-Atlantic Health and Welfare Benefits Plan (the "Verizon Plan"). Verizon is thus a representative and fiduciary of the Verizon Plan and is sued here in that capacity. Verizon and Verizon Plan may be served with process by serving C T Corporation System at 4701 Cox Rd, Suite 285, Glen Allen, VA 23060-6808.

35. Defendant Virginia Department of Transportation ("VDOT") is an agency and political subdivision of the Commonwealth of Virginia. Upon information and belief, VDOT serves as the plan sponsor and administrator of a health and welfare benefits program for the benefit of its employees and dependents called, upon information and belief, the Virginia Department of Transportation Health and Welfare Benefit Plan (the "VDOT Plan"). VDOT is thus a representative and fiduciary of the VDOT Plan and is sued here in that capacity. VDOT and the VDOT Plan may be served with process by serving the Commissioner of Highways (Virginia

Department of Transportation), VDOT Central Office, 1401 E. Broad Street, Richmond, Virginia 23219.

36. Defendant Walmart, Inc. ("Walmart") is a corporate entity organized under the laws of the State of Delaware and authorized to do business in Virginia. Walmart serves as a plan sponsor for a health and welfare benefits program or group health insurance policy for the benefit of its employees and dependents called, upon information and belief, the Walmart Inc. Associates' Health and Welfare Plan (the "Walmart Plan"). Walmart is thus a representative and fiduciary of the Walmart Plan and is sued here in that capacity. Walmart and Walmart Plan may be served with process by serving C T Corporation System at 4701 Cox Rd, Suite 285, Glen Allen, VA 23060-6808.

37. Advance Stores Company, Inc.; Allied Universal Corporation; Amazon, Inc.; AutoNation, Inc.; Best Buy Co., Inc.; Bryan Tool and Machining, Inc.; Cargill, Inc.; CoAdvantage Resources, Inc.; Commissioning Agents, Inc.; Franklin Electric Co., Inc.; G&B Holdings, Inc.; HII Mission Technologies Corp.; JPB Home Services LLC; K & K Foundation Sealing, Inc.; King George County Schools; NVR, Inc.; Teamsters Joint Council No. 83 of Virginia Health and Welfare Fund; Spotsylvania County Schools; Town of Bridgewater; Traylor Bros., Inc.; Universal Dynamics, Inc. d/b/a Piovan UnaDyn; Verizon Virginia LLC; Virginia Department of Transportation are each a "Sponsor" and collectively the "Sponsors." Each benefits plan sponsored by a Sponsor will be referred to as a "Plan" and collectively as the "Plans."

38. As identified on Exhibit A, certain Plans are health and welfare benefits program or group health insurance policy covering a patient whose transport is at issue in this case.

39. Certain Plans (as identified on Exhibit A) are employee welfare benefit plans—specifically group health insurance plans—subject to the Employee Retirement Income Security

Act of 1974 ("ERISA"), as amended. The IDR determinations at issue in this case concern out-of-network emergency air-ambulance services provided by PHI to participants or enrollees in or beneficiaries of the Plans. The Plans are proper defendants and may be sued in their own name pursuant to 29 U.S.C. § 1132(d). On information and belief, the Plans have purposefully availed themselves of this forum through their contractual relationship with Anthem, which conducts claims administration activities in this State, including the processing, adjudication, and payment (or nonpayment) of claims such as those at issue here. The claims at issue arise out of and relate to those in-forum activities, and the exercise of personal jurisdiction over the Plans is therefore proper.

40. On information and belief, Sponsors serve as plan sponsors for the Plans, which are employee welfare benefit plans for Sponsors' employees and their dependents. On information and belief, Sponsors exercise discretionary authority or control over the administration of the Plans and/or the payment of benefits and therefore function as fiduciaries within the meaning of ERISA, 29 U.S.C. § 1002(21). On information and belief, Sponsors have purposefully availed themselves of this forum by contracting with and directing Anthem to administer the Plans and make claims and payment determinations on their behalf, including with respect to the claims at issue here. The claims at issue arise out of and relate to those forum-directed activities, and the exercise of personal jurisdiction over Sponsors is therefore proper.

## III. JURISDICTION AND VENUE

41. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law, including the NSA, 29 U.S.C. § 1185e, 29 U.S.C. § 1185f, 42 U.S.C. § 300gg-111, and 42 U.S.C. § 300gg-112, which mandate the payment of IDR awards within thirty days of issuance.

42. As to Sponsors and Plans, this Court also has federal question jurisdiction under the civil enforcement provisions of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), (a)(2) and (a)(3), pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

43. This Court has personal jurisdiction over Plans and Sponsors under Federal Rule of Civil Procedure 4(k)(1)(C) and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), which authorizes nationwide service of process and thereby confers personal jurisdiction over Defendants having sufficient contacts with the United States, which includes all Plans and Sponsors.

44. The Court also has personal jurisdiction over Anthem because each Anthem entity is a Virginia corporation headquartered in Virginia.

45. The Court also has personal jurisdiction over Advance Stores Company, Inc., AutoNation, Inc., Bryan Tool and Machining, G&B Holdings, Inc., K&K Foundation Sealing, NVR, Inc., Universal Dynamics, Inc. d/b/a Piovan UnaDyn because they are incorporated in Virginia.

46. The Court has personal jurisdiction over Teamsters Joint Council No. 83 of Virginia Health and Welfare Fund as a Virginia labor union.

47. The Court has personal jurisdiction over King George County Schools, Spotsylvania County Schools, Town of Bridgwater, and the Virginia Department of Transportation because they are Virginia governmental entities.

48. Venue is proper under 28 U.S.C. § 1391(b)(2) because Anthem resides in and/or conducts substantial business in this District, and, on information and belief, the acts and omissions giving rise to PHI's claims—including the administration, processing, and decisions regarding nonpayment of claims and IDR awards—occurred in this District.

49. For ERISA claims, venue is also proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because the Plans are administered in this District and/or the alleged breaches giving rise to Plaintiff's claims occurred in this District through Anthem's administration, processing, and nonpayment of claims and IDR awards on behalf of the Plans here. In addition, venue is proper because the Plans and Sponsors may be found in this District through their contacts with and direction and/or control over claims administration activities conducted in this District on their behalf.

## IV. FACTUAL BACKGROUND

### A. The Importance of PHI's Service.

50. The air ambulance industry plays an integral role in the American healthcare system, and PHI provides an essential service for many Americans, including the beneficiaries of the Plans. Air ambulances serve as a lifeline connecting critically ill and injured patients to healthcare, particularly in rural American communities where, between 2010 and 2019, at least 106 rural hospitals have closed.[3]

51. Air ambulances transport trauma, stroke, heart attack, and burn patients and other emergent cases requiring critical care. Time and quality-of-care are of the essence during emergency air medical transport. By reaching the patient quickly (to provide emergency interventions) and then transporting that patient quickly to a qualified treatment facility while providing a higher level of care than ground ambulances, air ambulances save and improve lives.[4]

---

[3] S. McCarthy, MD, *et al.*, *Impact of Rural Hospital Closures on Health-Care Access*, J. Surgical Research, Feb. 2021 (258), pp. 170-178.

[4] *See, e.g.*, O. Lapidus *et al., Trauma patient transport to hospital using helicopter emergency medical services or road ambulance in Sweden: a comparison of survival and prehospital time intervals,* Scandinavian Journal of Trauma Resuscitation and Emergency Medicine (2023), vol. 31, p.101, https://perma.cc/WGP8-CSXC (based on study of medical records of 74,032 patients receiving emergency medical transports in Sweden between 2012 and 2022, authors concluded that "HEMS [helicopter-transported] patients had significantly lower mortality compared to patients transported by [ground] EMS"); D. Michaels, *et al.*, *Helicopter versus ground ambulance: review of national database for outcomes in survival in transferred trauma patients in the USA*, Trauma Surgery & Acute Care Open, Mar. 6,

52. The delivery of on-demand, life-saving air ambulance services is expensive and requires substantial investments in specialized aircraft, air bases, technology, personnel, and regulatory compliance systems.

53. PHI is critically dependent on payments from commercial health insurers derived from the NSA's IDR process. PHI provides just one service: emergency medical transport. The majority of the patients transported by PHI are covered by Medicare or Medicaid. Those government programs' reimbursements typically do not even cover PHI's costs of providing the services. PHI is therefore critically dependent upon the payments it receives from commercial health insurers, especially the payments now governed by the NSA.

**B. Background on the No Surprises Act ("NSA").**

54. The NSA became effective on January 1, 2022.

55. The NSA imposes a federal obligation on commercial health insurers to pay out-of-network providers for certain air ambulance services. The commercial health insurers must pay the applicable "out-of-network rate" due for the service directly to the provider, less any cost-sharing amount owed by the patient.

56. Pursuant to the statute, a group health plan or insurer has 30 days from the date on which the bill for a covered service is transmitted by the provider to pay or deny the claim. 29 U.S.C. § 1185e(b)(1)(C); 29 U.S.C. § 1185f(a)(3)(A); 42 U.S.C. § 300gg-111(b)(1)(C); 42 U.S.C. § 300gg-112(a)(3). If initial payment is too low, the provider may initiate an "open negotiation period" to attempt to negotiate a higher amount. 29 U.S.C. § 1185e(c)(1)(A); 29 U.S.C. § 1185f(b)(1)(A); 42 U.S.C. § 300gg-111(c)(1)(A); 42 U.S.C. § 300gg-112(b)(1). If the negotiations fail,

---

2019, https://perma.cc/KU8E-YLVE (based on analysis of 469,407 trauma patients receiving ground or air transport in the United States in 2014, and after adjusting for age, gender, and Injury Severity Score (ISS), the authors concluded that "trauma patients who were transferred by helicopter were 57.0% less likely to die than those transferred by GA [ground ambulance]").

the provider may initiate the IDR process. 29 U.S.C. § 1185e(c)(1)(B); 29 U.S.C. § 1185f(b)(1)(B); 42 U.S.C. § 300gg-111(c)(1)(B); 42 U.S.C. § 300gg-112(b)(2).

57. The IDR process is a mandatory arbitration process used to determine pricing for out-of-network air ambulance transports of patients who are covered by commercial health insurers.

58. Pursuant to the NSA, the U.S. Departments of Labor, Health and Human Services, and the Treasury (the "Departments") issued regulations to implement the IDR process. The Department or Departments with regulatory authority over a specific air ambulance transport and subsequent IDR dispute depend on the type of health insurance or group health plan at issue.

59. The IDR process is baseball-style arbitration. It requires each party to submit proposed offers of payment for the services at issue to a third-party IDR entity. 29 U.S.C. §§ 1185e(c)(5), 1185f(b)(5); 42 U.S.C. § 300gg-111(c)(5); 42 U.S.C. § 300gg-112(b)(5). The IDR entity considers both proposed offers and several statutory factors (about which the parties may submit information in support of their offers) and then must select one of the parties' offers as the payment amount owed for the services at issue. *Id.*

60. The NSA makes "binding" the IDR entity's determination. The commercial health insurer must make any additional "payment required" by the determination "directly to the nonparticipating provider **not later than 30 days after** the date on which such determination is made" by the IDR entity. 29 U.S.C. § 1185e(c)(6); 29 U.S.C. § 1185f(b)(6); 42 U.S.C. § 300gg-111(c)(6); 42 U.S.C. § 300gg-112(b)(6) (emphasis added).

61. Once a certified IDR entity issues a determination, the NSA affords the losing party only a narrow opportunity to challenge the award on the bases enumerated in 9 U.S.C. § 10(a)(1)-

(4). 29 U.S.C. § 1185e(c)(5)(E); 29 U.S.C. § 1185f(b)(5); 42 U.S.C. § 300gg-111(c)(5)(E); 42 U.S.C. § 300gg-112(b)(5). Any other attempt to challenge the award is barred. *Id*.

62. In enacting the NSA, Congress fundamentally altered the manner in which providers may obtain payment for covered services. Rather than permitting providers to pursue their traditional collection and reimbursement remedies, Congress required providers and payors to resolve payment disputes through a mandatory federal IDR process and made the resulting determinations binding. Congress further required payors to satisfy the payment amount determined through that process within thirty days, subject only to the limited vacatur grounds incorporated from the Federal Arbitration Act. The statute thus replaces providers' traditional enforcement mechanisms—including their right to bill patients for the full cost of providers' services—with a mandatory federal dispute-resolution framework that culminates in a binding payment obligation.

63. The NSA's restrictions on judicial *review* apply only to efforts to vacate or otherwise challenge the validity of an IDR determination, as noted above. Nothing in the statute extends those limitations to actions seeking to enforce compliance with a final and binding IDR determination.

64. Although the Departments are authorized to provide systemic oversight of the statute—including data collection, audits, rulemaking, and the potential imposition of modest civil monetary penalties payable to the government to deter systemic noncompliance[5]—they lack

[5] The availability of civil monetary penalties for nonpayment of IDR awards is itself disputed. On information and belief, certain payors contend that the Departments' preexisting civil monetary penalty authority does not extend to the failure to pay binding IDR determinations. Yet payors have argued in litigation that providers must rely on administrative enforcement rather than judicial enforcement to remedy that same nonpayment. If the Departments lack authority to penalize nonpayment, as those payors contend, administrative enforcement supplies no remedy for that violation; and even if such authority exists, a penalty payable to the government neither compels payment of the particular award nor provides the prevailing provider the amount it is statutorily owed.

authority to compel payment of individual IDR awards to prevailing providers. The NSA provides no administrative mechanism through which a prevailing provider may compel payment of an individual IDR award, leaving judicial enforcement as the only means of effectuating the statute's mandatory payment obligation.

65. Absent judicial enforcement, a losing payor could disregard a binding IDR determination without satisfying the underlying payment obligation, rendering Congress's mandatory payment requirement effectively unenforceable. The NSA's text and structure do not permit that result; rather, they require that binding IDR determinations be enforceable so that prevailing providers receive the payments to which they are entitled.

**C. PHI Filed Arbitration and Prevailed, Yet Defendants Refuse to Pay.**

66. The air ambulance services provided by PHI were air ambulance services furnished as a nonparticipating provider to participants, beneficiaries, or enrollees ("Patients") of commercial health insurers. Those services are "qualified IDR items and services" under 45 C.F.R. § 149.510(a)(2) and 29 C.F.R. § 2590.716-8(a)(2), and they qualify for mandatory payment under the NSA, including 29 U.S.C. §§ 1185e(a)(1), 1185f(a); 42 U.S.C. § 300gg-111(a)(1); and 42 U.S.C. § 300gg-112(a).

67. Defendants and Patients received the benefit of PHI's air ambulance services during times of emergent medical need. In many situations, lives were saved or more serious conditions avoided (and thus the costs associated therewith).

68. PHI followed industry-standard billing processes for billing Defendants for these transports.

69. In response, Anthem sent PHI either a denial of payment or low initial payments for the two service codes billed for the transports.

70. Because the initial payments were deficient, PHI turned to the dispute resolution process set forth in the NSA.

71. PHI first timely initiated the open negotiation process. The dates on which open negotiation was initiated for the unpaid awards are listed on Exhibit A. The parties were unable to agree to a payment rate for PHI's services during the open negotiation periods.

72. When open negotiations failed, PHI timely initiated IDR proceedings by submitting notices of initiation through the federal IDR portal for the transports and service codes at issue. The dates on which IDR proceedings were initiated are listed on Exhibit A.

73. During the IDR process, PHI timely submitted its offers for payment, as well as information in support of those offers.

74. Anthem (as insurer or TPA) received notice of the related IDR proceedings and submitted or had the opportunity to submit an offer and supporting documentation. To the extent Anthem raised any objection to any dispute's eligibility for the federal IDR process, those objections were adjudicated and rejected by the certified IDR entity before or as part of the issuance of the IDR Awards.

75. The certified IDR entity (*i.e.*, arbitrator) then issued the IDR Awards, which resulted in PHI being owed additional payments for the out-of-network services, copies of which are attached as Exhibit B. The IDR Awards are final and binding. PHI is not aware of Defendants either contesting their binding nature or seeking vacatur, modification, or correction of any IDR Awards identified in Exhibits A and B.

**D. Anthem's Systemic Nonpayment and the Plan Fiduciaries' Knowledge.**

76. Anthem's failure to pay the IDR Awards at issue in this case is part of its systemic pattern of nonpayment. Anthem has failed and refused to pay over 1,200 final IDR determinations

owed to PHI, totaling approximately $30 million. Even when Anthem has paid, it routinely has failed to do so within 30 days of the written determination.

77. Anthem's systemic nonpayment reflects its adoption or implementation of a widespread practice of refusing to satisfy, either on time or at all, final and binding written determinations issued under the No Surprises Act. That practice applies to written determinations for which Anthem participated in the IDR process, submitted payment offers, and received final determinations on behalf of the group health plans and insurance products that it administers.

78. The Plan Fiduciary Defendants knew or should have known of Anthem's systemic nonpayment. Anthem's nonpayment affected claims administered for their own Plans. PHI and other providers issued demands and notices concerning unpaid awards. Lawsuits and judicial decisions concerning Anthem's nonpayment of IDR awards by PHI and other providers are publicly available and publicized. The scale and persistence of Anthem's nonpayment, representing systemic noncompliance with federal law, presented information that required prudent fiduciaries to investigate whether Anthem was administering Plan benefits in compliance with ERISA, including Plan terms.

79. Yet the Plan Fiduciaries continued to retain Anthem, continued to permit Anthem to administer NSA-governed claims, failed to require Anthem to satisfy unpaid IDR awards, failed to require adequate reporting concerning Anthem's compliance with the NSA, failed to implement corrective monitoring procedures, and failed to take reasonable steps to prevent continuing nonpayment of IDR determinations in violation of the law.

## V. <u>CLAIMS</u>

### Count 1: Confirmation of IDR Awards Under the NSA
### (29 U.S.C. § 1185e(c)(5)-(6); 29 U.S.C. § 1185f(b)(5)-(6); 42 U.S.C. § 300gg-111(c)(5)-(6); 42 U.S.C. § 300gg-112(b)(5)-(6))

*(Against all Defendants)*

80. PHI incorporates by reference the allegations of the preceding paragraphs.

81. The NSA creates enforceable rights for providers like PHI. The NSA uses clear, mandatory, rights-creating language, including that a determination of a certified IDR entity "*shall be binding upon the parties involved*" and that payment "*shall be made directly to* [PHI] *not later than 30 days after* the date on which such determination is made" by the IDR entity. 29 U.S.C. § 1185e(c)(5)(E), (c)(6); 29 U.S.C. § 1185f(b)(5)-(6); 42 U.S.C. § 300gg-111(c)(5)(E)-(c)(6); 42 U.S.C. § 300gg-112(b)(5)-(6) (emphasis added).[6] These provisions impose a specific money-mandating obligation to pay a sum certain to providers by a date certain. PHI, as a provider, is within the class of entities the NSA is designed to protect.

82. Congress specified that a provider is owed a specific amount (as determined by the certified IDR entity), from a specific payor (the plan or insurer that participated in the IDR process), by a date certain (no later than 30 days after the determination). Statutes that impose such mandatory payment obligations have long been understood to create enforceable rights and remedies, particularly where, as here, the obligation is fixed, final, and non-discretionary. *See, e.g., Maine Cmty. Health Options v. United States*, 590 U.S. 296, 324–28 (2020) ("Statutory 'shall pay' language often reflects congressional intent to 'create both a right and a remedy'").

83. These provisions are phrased in explicit, rights-creating terms and are unmistakably focused on the class of entities Congress intended to benefit—out-of-network emergency providers that prevail in the IDR process. They satisfy the standard articulated in *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023), and *Gonzaga University v. Doe*, 536 U.S. 273 (2002), for the creation of enforceable federal rights.

84. This action does not challenge or seek judicial *review* of the merits of any IDR

[6] And, as applicable, 26 U.S.C. § 9817.

determination, which Congress limited to the narrow grounds for vacatur under the Federal Arbitration Act. 29 U.S.C. § 1185e(c)(5)(E)(i); 42 U.S.C. § 300gg-111(c)(5)(E)(i). Instead, this action simply seeks judicial *enforcement* of a binding award. Judicial enforcement is categorically different from judicial review in that it does not seek to challenge nor disturb the written determination, and judicial enforcement is necessary to give effect to Congress's command that binding determinations be timely paid. *PHI Health, LLC v. Optimum Choice, Inc. d/b/a United Healthcare,* 826 F. Supp. 3d 654, 660 (D. Md. 2026); *see also* ¶ 136, n.8 *infra*.

85. Absent judicial enforcement, the NSA's declaration that IDR determinations are "binding" and "shall" be paid would be rendered precatory rather than mandatory, contrary to Congress's express design.

86. No federal agency is authorized by the NSA to compel payment of individual IDR awards through administrative proceedings. Although the Departments were directed under the NSA to engage in administrative rulemaking, to conduct audits of payors' "qualifying payment amount" calculations, and to select and certify IDR arbitrators, the NSA *does not* direct or empower these agencies to collect, adjudicate, or compel payment from insurers to providers.

87. Absent judicial enforcement, Defendants could ignore binding IDR determinations with impunity, as Defendants are attempting here, rendering Congress's carefully constructed dispute-resolution framework meaningless. *PHI Health*, 826 F. Supp. 3d at 660; *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 227–29 (D. Conn. 2025); *Richard Agag, MD*, 2026 WL 1021213, at *13.

88. In the NSA, Congress prohibited providers from balance billing patients and extinguished common-law and state-law avenues for recovery. The IDR process and the mandatory payment obligation that follows a binding determination are the exclusive means by

which providers may obtain compensation. It is inconceivable that Congress intended to strip providers of all alternative remedies while simultaneously leaving prevailing providers without any mechanism to enforce binding federal payment determinations.

89. PHI thus has a right under the NSA to judicial enforcement of IDR Awards that commercial health insurers fail to pay within 30 days.

90. More than 30 days have passed since each IDR Award was issued, and PHI has not received the payment due on those awards.

91. Defendants have not filed suit to vacate the IDR Awards pursuant to the limited grounds authorized by statute; they simply have not paid the award at all.

92. The amounts owed on unpaid, partially paid, and late-paid awards plus pre-judgment and post-judgment interest should be issued as a final judgment.

**Count 2: Confirmation of IDR Award Under Federal Arbitration Act**
**(9 U.S.C. §§ 1 *et seq*.)**
*(Against all Defendants)*

93. PHI incorporates by reference the allegations of the preceding paragraphs.

94. The IDR process constitutes arbitration within the meaning of the Federal Arbitration Act.

95. Defendants agreed to binding dispute resolution. For example, Defendants made an offer on the Explanation of Benefits for the services at issue stating that PHI could utilize the federal IDR process to determine the amount due to PHI for its out-of-network services, which PHI accepted by initiating the IDR process; Defendants then participated in the resulting IDR process by submitting their own offers of payment and information in support. In the limited instances where Defendants objected, those objections were adjudicated and rejected by the certified IDR entity before or as part of the issuance of the IDR Awards. Defendants also

voluntarily provided or administered coverage or benefits subject to the NSA, knowing that doing so required participation in the federal IDR process; and they thereby further consented to participate in the federal IDR process.

96. In the NSA, Congress also indicated that IDR written determinations are to be treated as arbitration awards. For example, Congress mandated that such an award could only be vacated on the grounds set forth in Paragraphs 1 through 4 of Section 10 of the Federal Arbitration Act.

97. The certified IDR entities acted as neutral adjudicators with respect to the IDR Award.

98. The IDR Award is a valid arbitration award that has not been vacated or set aside by any authority.

99. Confirmation is not "judicial review" of the merits of an IDR determination but rather ministerial entry of judgment on the award previously rendered. The IDR Awards should thus be confirmed by judgment of this Court pursuant to the FAA, 9 U.S.C. § 9.

**Count 3: Confirmation of IDR Awards Under the Virginia Arbitration Act**
**Va. Code §§ 8.01-581.09 and 8.01-581.012**
*(Against all Defendants)*

100. PHI incorporates by reference the allegations of the preceding paragraphs.

101. The IDR process constitutes arbitration within the meaning of the Virginia Arbitration Act.

102. Defendants agreed to binding dispute resolution. For example, Defendants made offers on the Explanation of Benefits for the services at issue stating that PHI could utilize the federal IDR process to determine the amount due to PHI for its out-of-network services (which PHI accepted by initiating the IDR process). Defendants then participated in or had the opportunity

to participate in the resulting IDR process, by submitting their own offer for the amount of payment due to PHI with information in support of their offer. If Defendants raised objections concerning the disputes' eligibility for the federal IDR process, those objections were adjudicated and rejected by the certified IDR entity before or as part of the issuance of the IDR Awards. Defendants also voluntarily provided or administered coverage or benefits subject to the NSA, knowing that doing so required participation in the federal IDR process; and they thereby further consented to participate in the federal IDR process.

103. In the NSA, Congress also indicated that IDR written determinations are to be treated as arbitration awards. For example, Congress mandated that such an award could only be vacated on the grounds set forth in Paragraphs 1 through 4 of Section 10 of the Federal Arbitration Act.

104. The certified IDR entities acted as neutral adjudicators with respect to the IDR Award.

105. The IDR Award is a valid arbitration award that has not been vacated or set aside by any authority.

106. Confirmation is not "judicial review" but rather entry of the awards previously rendered. The IDR Awards should thus be confirmed by judgment of this Court pursuant to the Virginia Arbitration Act, Va. Code §§ 8.01-581.09 and 8.01-581.012. *PHI Health, LLC v. Marpai Administrators, LLC*, No. CV 2025-014762, at 3–6 (Ariz. Super. Ct. Maricopa Cnty. June 2, 2026); *PHI Health, LLC v. Marpai Administrators, LLC*, No. CV 2025-035807, at 2–4 (Ariz. Super. Ct. Maricopa Cnty. July 1, 2026).

**Count 4: Claim for Enforcement of NSA Under ERISA and Payment of Plan Benefits (ERISA 29 U.S.C. § 1132(a)(1)(B))**

*(Limited to awards involving ERISA plans as indicated on Exhibit A)*

107. PHI realleges and incorporates all preceding paragraphs.

108. On information and belief, the accounts set forth on Exhibit A as ERISA claims involve Patients transported by PHI who, at the time of the transport, were participants or enrollees in or beneficiaries of employee welfare benefit plans—specifically group health plans—subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended (collectively, the "ERISA Claims"). The benefit plans that apply to these accounts are called the "ERISA Plans."

109. Upon information and belief, the names of the ERISA Plans and Sponsors are set forth at Exhibit A. Such parties are collectively referred to herein as the "ERISA Defendants." Anthem and each Sponsor act, on information and belief, as fiduciaries and/or parties exercising discretionary authority or control over plan administration and claims payment.

110. With respect to the ERISA Claims, PHI has been assigned all of Patients' claims under and with respect to the ERISA Plans, including Patients' rights under 29 U.S.C. §§ 1132(a)(1) and (a)(3) such as to recover benefits due and to seek equitable relief. The Assignments of Benefits state, in relevant part:

> **Authorized Representative:** I hereby designate and authorize Provider, to the full extent permissible under law and under any applicable Benefit Plan, including any ERISA plan, to act as my Authorized Representative and to exercise: (1) the right and ability to act on my behalf in connection with any claim, right or cause of action that I may have under such Benefit Plan; and (2) the right and ability to act on my behalf to pursue such claim, right, or cause of action in connection with said Benefit Plan (including but not limited to, the right to act on my behalf in respect to a Benefit Plan governed by the provisions of ERISA as provided in 29 C.F.R. § 2560.503-1(b)(4)) with respect to any healthcare expense incurred as a result of the Services I received from Provider and, to the extent permissible under the law, to claim on my behalf such benefits, claims, or reimbursement, and any other applicable remedy, including fines. A photocopy of this Consent and Assignment shall be as effective and valid as the original.

111. ERISA, as amended by the NSA, also mandates the assignment of Patients' claims and benefits to PHI by operation of law. ERISA mandates that the ERISA Plans "shall . . . pay"

the amount due on the IDR awards "directly to" the beneficiary's provider of air ambulance services. 29 U.S.C. § 1185f(a)(3); *see also id.* § (b)(6) (requiring payment "shall be made directly to the nonparticipating provider" by the ERISA Plans).

112. PHI thus has stepped into the shoes of Patients and is now considered a beneficiary of the ERISA Plans pursuant to 29 U.S.C. § 1002(8).

113. Subchapter I of ERISA incorporates requirements of the NSA, including NSA's requirement that a determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "shall be made directly to the nonparticipating provider not later than 30 days after the date on which such determination is made." 29 U.S.C. § 1185e(c)(5)(E)(i)(I); *id.* § 1185f (b)(5)(D), (6).

114. Upon information and belief, the terms of the ERISA Plans incorporate NSA requirements. Among those incorporated requirements is the obligation for IDR written determinations to be fully paid within 30 days.

115. As the assigned beneficiary, PHI is entitled to enforce the requirements of the NSA, as incorporated into ERISA and, in turn, the terms of the ERISA Plans—including the duty to pay written determinations within 30 days.

116. On information and belief, the ERISA Plans—including their guarantee of NSA-compliant coverage for air ambulance services—were provided as consideration for labor services provided by Patients or their immediate family members to the Plan Sponsors, who also paid at least a portion of premiums due for such coverage. The benefits purchased with that consideration were supposed to ensure that Patients' air ambulance providers were fully compensated for their services consistent with the terms of the ERISA Plans and ERISA itself.

117. Patients have a strong and concrete interest in ensuring that their group health plans comply with the NSA's requirement that they fully and promptly satisfy IDR written determinations. Patients require the continued availability of air ambulance services—as shown by their use of those services in an emergency here.

118. PHI and other air-ambulance providers have aircraft and personnel on standby 24/7 regardless of whether an emergency transport is needed. Those high fixed costs must be offset by reliable payment for beneficiaries' air ambulance services by commercial payors, including group health plans, to remain available.

119. Under 29 U.S.C. § 1132(a)(1), PHI, as assignee-beneficiary, is entitled to sue "to recover benefits due to [it] under the terms of his plan, to enforce [its] rights under the terms of the plan, or to clarify [its] rights to future benefits under the terms of the plan."

120. On information and belief, the benefits due to PHI, as assignee-beneficiary, under the terms of the ERISA Plans include the amounts due pursuant to the written determinations—which issued pursuant to PHI's proper claims for benefits under the ERISA Plans. Upon information and belief, the rights of PHI, as assignee-beneficiary, under the terms of the ERISA Plans include having the ERISA Plans (either directly or acting through their administrators) pay the written determination within 30 days, as required by federal law. The ERISA Plans have refused to pay those benefits—let alone to do so within 30 days.

121. The ERISA Plans' and other ERISA Defendants' failure to pay the ERISA Claims within 30 days (and ongoing refusal to do so) violates the Patients' (and therefore PHI's) rights under ERISA (including 29 U.S.C. §§ 1185e & 1185f) and the terms of the ERISA Plans. That failure to pay constituted an abuse of discretion, including by i) improperly interpreting and applying the ERISA Plans' terms that are not ambiguous; ii) exercising discretion over non-

discretionary terms in the ERISA Plans; and iii) denying PHI payment and benefits under the terms of the ERISA Plans.

122. The denials of payment and benefits owed on written determinations were not substantially justified decisions, were arbitrary and capricious, were unsupported by substantial evidence, constituted abuse of any discretion allowed, and were wrongful under all of the circumstances. The payment obligations with respect to a written determination are automatic and unambiguous.

123. Pursuant to 29 U.S.C. § 1132(a)(1), PHI is therefore entitled to the unpaid amount on the written determination, plus interest.

124. PHI is excused from any requirement to exhaust the ERISA Plans' appeal processes (or such processes are deemed exhausted) before filing this suit because, *inter alia*, i) the ERISA Plans have breached statutory and regulatory requirements; ii) any appeal would be futile since the ERISA Plans would already have missed their payment deadline; and iii) with respect to ERISA Plans' failure to satisfy IDR written determinations, the ERISA Plans do not afford an appeal procedure that provides full and fair review nor do they provide instructions for how to utilize their appeal procedure (if any).

125. Pursuant to 29 U.S.C. § 1132(g), PHI further seeks an award of reasonable attorneys' fees and costs incurred in bringing this action.

**Count 5: Breach of ERISA Fiduciary Duties**
**(29 U.S.C. §§ 1104(a), 1105(a), 1109, 1132(a)(2), and 1132(a)(3))**
*(Against Defendants except Anthem)*

126. PHI incorporates by reference the allegations of the preceding paragraphs.

127. This Count is asserted against Sponsors, administrators, employee benefit committees, administrative committees, and/or other persons or entities that, with respect to the

ERISA Plans identified in Exhibit A, possessed or exercised discretionary authority or responsibility for selecting, appointing, retaining, monitoring, supervising, directing, or removing Anthem as claims administrator, third-party administrator, service provider, or fiduciary (collectively, the "Plan Fiduciary Defendants").[7]

128. At all relevant times, the Plan Fiduciary Defendants were fiduciaries within the meaning of ERISA because they possessed and exercised discretionary authority or discretionary control respecting management or administration of the ERISA Plans, exercised authority or control respecting disposition of Plan benefits, and/or possessed discretionary authority or responsibility for selecting, appointing, retaining, monitoring, supervising, directing, or removing Anthem as a claims administrator, third-party administrator, service provider, or co-fiduciary for the ERISA Plans, and/or exercised discretionary authority or control respecting management or administration of the ERISA Plans or the disposition of Plan benefits.

129. PHI brings this Count as the express and knowing assignee of the Patients' rights and causes of action under the ERISA Plans, including their rights to enforce the Plan Fiduciary Defendants' fiduciary duties of loyalty and prudence and to obtain relief under 29 U.S.C. §§ 1109, 1132(a)(2), and 1132(a)(3).

130. ERISA requires fiduciaries to discharge their duties with respect to a plan solely in the interests of participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable administrative expenses, and to do so with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent

[7] This Count is asserted only against the Plan Fiduciary Defendants and not against Anthem. References in this Count to Anthem's fiduciary status, if any, are included solely to support the alleged monitoring, retention, co-fiduciary, and related fiduciary-duty claims asserted against the Plan Fiduciary Defendants.

fiduciary acting in a like capacity and familiar with such matters would use. 29 U.S.C. § 1104(a)(1).

131. These duties include the obligation to *prudently select* service providers and fiduciaries to administer Plan benefits, to *continually monitor* appointed service providers and fiduciaries, to *investigate* credible evidence of misconduct or noncompliance affecting Plan administration, and to take *reasonable corrective action* when an appointed claims administrator or fiduciary systematically administers Plan benefits contrary to governing federal law or applicable Plan terms.

132. The ERISA Plans and their fiduciaries are required to comply with ERISA, as amended by the No Surprises Act, including the NSA's requirements governing out-of-network air ambulance services, the federal IDR process, binding IDR determinations, and timely direct payment of amounts required by final IDR determinations. The ERISA Plans' terms also require compliance with those NSA requirements.

133. Upon information and belief, the Plan Fiduciary Defendants appointed, retained, renewed, or continued to permit Anthem to administer claims, process benefits, make or implement benefit determinations, and/or make payment decisions for out-of-network air ambulance services furnished to participants and beneficiaries of the ERISA Plans. That appointment included responsibility for administering the ERISA Plans with respect to the NSA, including participating in the federal IDR process and ensuring the satisfaction of written determinations in a timely manner as required by federal law.

134. Upon information and belief, Anthem exercised discretionary authority or control over Plan management and administration with respect to benefit claims, including by determining whether and how claims would be processed, whether to participate in open negotiation and IDR

proceedings, and what positions to take during the IDR process. Anthem also exercised authority or control with respect to the payment or nonpayment of amounts required by binding federal IDR awards. To the extent Anthem exercised discretionary authority or control over Plan administration or authority or control over Plan assets with respect to the claims and payment obligations at issue, Anthem acted as an ERISA fiduciary with respect to those functions.

135. By no later than 2025, and, in any event, before this action was filed, the Plan Fiduciary Defendants knew or, through the exercise of reasonable diligence, should have recognized circumstances requiring investigation into whether Anthem had adopted, implemented, or was following a widespread practice of refusing to timely satisfy final and binding IDR determinations issued under the No Surprises Act.

136. The Plan Fiduciary Defendants' knowledge, notice, and duty to investigate arose from multiple sources, including, without limitation:

a. unpaid IDR awards involving their own Plans;
b. written demands and communications from PHI and other providers concerning unpaid IDR awards;
c. Anthem's repeated failure to pay IDR awards within the statutory thirty-day deadline, culminating in over a thousand unpaid IDR awards due PHI valued at approximately $30M;
d. lawsuits filed against Anthem and Anthem-administered plans seeking enforcement of unpaid IDR awards;[8]

---

[8] In addition to the suits filed by PHI here, in Kentucky, Ohio, Missouri, Virginia, and Indiana, additional cases where providers sued Anthem for failure to pay IDR awards include: *Northeast Plastic Surgery Center LLC v. Anthem HealthChoice Assurance, Inc.*, Cause No. 3:26-cv-01276-SFR, U.S. District Court for the District of Connecticut (Aug. 7, 2026); *Tomer Avraham MD Plastic Surgery LLC v. Anthem HealthChoice Assurance, Inc.*, Cause No. 3:26-cv-01274-VDO, U.S. District Court for the District of Connecticut (Aug. 7, 2026); *New England PA LLC v. Anthem HealthChoice Assurance, Inc.*, Cause No. 3:26-cv-01273-KAD, U.S. District Court for the District of Connecticut (Aug. 7, 2026); *Shareef Jandali Plastic Surgery, LLC v. Anthem HealthChoice Assurance, Inc.*, Cause No. 3:26-cv-01256-KAD, U.S. District Court for the District of Connecticut (Aug. 6, 2026); *Tomer Avraham, M.D. Plastic Surgery, LLC v. Anthem HealthChoice Assurance, Inc.*, Cause No. 3:26-cv-01230-OAW, U.S. District Court for the District of Connecticut (Aug. 3, 2026); *West Coast Neuro, Inc. v. Anthem Blue Cross Life and Health Insurance Company*, Cause No. 2:26-cv-08489-SB-BFM, U.S. District Court for the Central District of California (July 31, 2026); *Branko PRPA MD LLC v. Blue Cross Blue Shield of Wisconsin et al.*, Cause No. 2:26-cv-01270-JPS, U.S. District Court for the Eastern District of Wisconsin (July 20, 2026); *Nirav B. Savalia v. Anthem Blue Cross Life and Health Insurance Company et al.*, Cause No. 8:26-cv-00806-FWS-KES, U.S. District Court for the Central District of California (Apr. 2, 2026); *Springhill Hospitals Inc v. Blue Cross and Blue Shield Association et al.*, Cause No. 2:26-cv-00264-AMM, U.S. District Court for the Northern District of Alabama (Feb. 12, 2026); *AA Medical, P.C. v. Anthem Blue Cross Blue*

e. governmental guidance and statutory provisions requiring timely payment of IDR determinations. 29 U.S.C. § 1185e(c)(5)-(6); 29 U.S.C. § 1185f(b)(5)-(6); 29 C.F.R. §§ 2590.716-8, 2590.717-1;

f. judicial decisions concerning the enforceability of binding IDR awards. *New England PA, LLC v. Cigna Health & Life Insurance Co.*, No. 3:25-cv-01472-JCH (D. Conn. July 21, 2026); *Northeast Plastic Surgery Center, LLC v. Cigna Health & Life Insurance Co.*, No. 3:25-cv-01476-JCH (D. Conn. July 21, 2026); *Shareef Jandali Plastic Surgery, LLC v. Cigna Health & Life Insurance Co.*, No. 3:25-cv-01367-JCH (D. Conn. July 21, 2026); *Shareef Jandali Plastic Surgery, LLC v. Cigna Health & Life Insurance Co.*, No. 3:25-cv-01168-JCH (D. Conn. July 21, 2026); *Agag v. Cigna Health & Life Insurance Co.*, No. 3:25-cv-00498-SRU, 2026 WL 1021213 (D. Conn. Apr. 15, 2026); *PHI Health, LLC v. Optimum Choice, Inc.*, 826 F. Supp. 3d 654 (D. Md. 2026); *Guardian Flight LLC v. Aetna Life Insurance Co.*, 789 F. Supp. 3d 214 (D. Conn. 2025); *Guardian Flight, L.L.C. v. Health Care Service Corp.*, 140 F.4th 271 (5th Cir. 2025); *GPS of New Jersey M.D., P.C. v. Horizon Blue Cross & Blue Shield*, No. 22-6614, 2023 WL 5815821 (D.N.J. Sept. 8, 2023);

g. repeated notices identifying unpaid arbitration awards administered by Anthem;

h. articles and public reporting concerning the nonpayment of IDR awards, including by Anthem, including the August 2026 Zoppoth Law Firm publication reporting PHI's allegations of widespread Elevance nonpayment and expressly addressing whether employer-plan fiduciaries failed to oversee compliance;[9] and

---

*Shield*, Cause No. 2:25-cv-06686-ARL, U.S. District Court for the Eastern District of New York (Dec. 3, 2025); *David Anschel, MD v. Anthem Blue Cross Blue Shield*, Cause No. 2:25-cv-06203-NJC-JMW, U.S. District Court for the Eastern District of New York (Nov. 6, 2025); *Tomer Avraham MD Plastic Surgery LLC v. Anthem HealthChoice Assurance, Inc. d/b/a Anthem Blue Cross Blue Shield*, Cause No. 1:25-cv-08478-RA, U.S. District Court for the Southern District of New York (Oct. 14, 2025); *Northeast Plastic Surgery Center, LLC v. Anthem Blue Cross Blue Shield*, Cause No. 3:25-cv-01646-SFR, U.S. District Court for the District of Connecticut (Oct. 2, 2025); *Long Island Neuroscience Specialists LLP v. Anthem Blue Cross and Blue Shield*, Cause No. 2:25-cv-05183-JMA-AYS, U.S. District Court for the Eastern District of New York (Sept. 16, 2025); *Francesco Gargano MD PC v. Anthem BlueCross Blue Shield*, Cause No. 1:25-cv-07672-JPC, U.S. District Court for the Southern District of New York (Sept. 16, 2025); *Plastic & Reconstructive Surgery Group, P.C. v. Anthem Blue Cross Blue Shield*, Cause No. 3:25-cv-01519-SRU, U.S. District Court for the District of Connecticut (Sept. 11, 2025); *Oppenheim and Degen Neurosurgical Surgeons v. Elevance Health, Inc.*, Cause No. 7:25-cv-06901-NSR, U.S. District Court for the Southern District of New York (Aug. 21, 2025); *T.V. Seshan MD PC v. Anthem Blue Cross Blue Shield*, Cause No. 7:25-cv-04402-CS, U.S. District Court for the Southern District of New York (May 27, 2025); *Interventional Neuro Associates v. Anthem Blue Cross Blue Shield*, Cause No. 2:25-cv-02437-RER-AYS, U.S. District Court for the Eastern District of New York (May 2, 2025); *Healthspine & Anesthesia Institute v. Anthem Blue Cross Blue Shield*, Cause No. 7:25-cv-03559-PMH, U.S. District Court for the Southern District of New York (Apr. 29, 2025); *Francesco Gargano MD PC v. Anthem Blue Cross Blue Shield*, Cause No. 1:24-cv-08786-AKH, U.S. District Court for the Southern District of New York (Nov. 19, 2024); *Jeffrey Farkas, M.D., LLC v. Anthem Blue Cross and Blue Shield*, Cause No. 1:24-cv-07871-FB-LKE, U.S. District Court for the Eastern District of New York (Nov. 12, 2024); *Jeffrey Farkas, M.D., LLC v. Anthem Blue Cross and Blue Shield*, Cause No. 2:24-cv-07248-LGD, U.S. District Court for the Eastern District of New York (Oct. 15, 2024).

[9] See, *e.g.,* Nick Hut, *No Surprises Act IDR Enforcement Uncertain After Supreme Court Declines Review*, HFMA (Jan. 14, 2026) (reporting public disputes concerning unpaid IDR awards and the availability of enforcement mechanisms); *Anthem Sued for $2.1 Million in Unpaid NSA Arbitration Awards*, Minevich Law Group (May 23, 2026) (reporting lawsuits alleging Anthem failed to timely satisfy numerous binding IDR determinations and describing the alleged nonpayment as a pattern rather than isolated claim-processing errors); *Lawsuit Alleges Widespread Elevance Health Nonpayment of Binding Federal Arbitration Awards in Violation of the No Surprises Act; Claims Plan*

i. the scale, pattern, and persistence of Anthem's nonpayment, including Anthem's nonpayment of over a *thousand* federal IDR determinations to PHI, which demonstrated that Anthem's conduct was not an isolated claim error, but a systemic practice affecting large numbers of final IDR awards.

137. These public proceedings and publications did more than identify isolated unpaid awards. They publicly raised questions concerning Anthem's overall administration of NSA-governed claims, its treatment of binding IDR determinations, and the resulting litigation and compliance risks to employer-sponsored plans. A prudent fiduciary responsible for retaining and monitoring Anthem therefore had reason to investigate whether Anthem was administering the fiduciary's own Plan in compliance with the NSA, ERISA, and applicable Plan terms.

138. Anthem's nonpayment practice affected over a thousand final IDR awards owed to PHI, totaling approximately $30 million. Anthem's refusal to pay final IDR awards was therefore not an isolated administrative mistake, but a widespread and persistent course of claims administration that the Plan Fiduciary Defendants knew or reasonably should have monitored, investigated, and addressed.

139. A prudent fiduciary acting solely in the interests of participants and beneficiaries would have maintained reasonable procedures to monitor the administration and payment of final and binding written determinations and would have investigated credible information that its appointed claims administrator was refusing to comply with final federal payment determinations. Systemic noncompliance with such determinations presented a substantial risk that Plan benefits were being administered inconsistently with ERISA, including the NSA, and the terms of the

---

*Fiduciaries Failed to Oversee Compliance*, The Zoppoth Law Firm (Aug. 2026) (reporting PHI's allegations that Elevance-affiliated entities failed to timely satisfy binding IDR awards and that plan fiduciaries failed to adequately oversee compliance with federal payment obligations).

Plans, denied benefits owed to beneficiaries, privileged the interests of the TPA and Plan Sponsors, and exposed the Plans to litigation and compliance risk.

140. The Plan Fiduciary Defendants breached their fiduciary duties by failing to conduct prudent monitoring of and investigation into Anthem's nonpayment practices; failing to demand adequate reporting concerning unpaid IDR awards; failing to require corrective action concerning nonpayment of binding IDR determinations; failing to implement monitoring procedures sufficient to ensure compliance with ERISA, including the NSA, and applicable ERISA Plan terms; failing to suspend, limit, or modify Anthem's authority to administer affected claims; and failing to replace Anthem, appoint an alternative claims administrator, or direct the payment of amounts due on written determinations despite knowledge or notice of Anthem's continuing noncompliance.

141. The Plan Fiduciary Defendants also breached their fiduciary duties by selecting, reappointing, renewing, or continuing to retain Anthem as claims administrator, third-party administrator, service provider, or fiduciary despite Anthem's engagement in a widespread practice of failing and refusing to honor binding federal IDR payment determinations.

142. Rather than take corrective action, the Plan Fiduciary Defendants knowingly tolerated Anthem's refusal to pay final IDR awards for purposes of administrative convenience, cost avoidance, or advancing their own financial interests or those of Anthem rather than the interests of participants and beneficiaries. Such conduct also violated ERISA's duty of loyalty.

143. The Plan Fiduciary Defendants' conduct violated ERISA's duty of prudence, and, to the extent supported by the facts alleged and established through discovery, the duty of loyalty, because they failed to administer and oversee the Plans solely in the interests of participants and beneficiaries, failed to act with the care, skill, prudence, and diligence required of ERISA

fiduciaries, and failed to take reasonable steps to ensure that the Plans were administered in accordance with governing federal law and applicable Plan terms. 29 U.S.C. § 1104(a)(1).

144. In the alternative, to the extent Anthem functioned as an ERISA fiduciary with respect to the claims and payment obligations at issue and breached fiduciary duties imposed by ERISA, the Plan Fiduciary Defendants are liable under ERISA § 405 as co-fiduciaries. They knowingly participated in, knowingly enabled, or knowingly failed to make reasonable efforts to remedy Anthem's breaches after acquiring actual or constructive knowledge of Anthem's failure to comply with final and binding IDR determinations. 29 U.S.C. § 1105(a). The Plan Fiduciary Defendants, through their own breaches of their duties under § 1104(a), enabled Anthem to commit fiduciary breaches within the meaning of § 1105(a)(2). Further, to the extent discovery establishes that a Plan Fiduciary Defendant had actual knowledge of a fiduciary breach by Anthem, that Defendant knowingly participated in such breach or failed to make reasonable efforts under the circumstances to remedy the breach within the meaning of § 1105(a)(1) and/or § 1105(a)(3).

145. The Plan Fiduciary Defendants' breaches caused harm to the ERISA Plans and impaired participants' and beneficiaries' rights to have Plan benefits administered in accordance with ERISA, including the NSA, and applicable Plan terms. Upon information and belief, and to the extent established through discovery, the Plan Fiduciary Defendants' breaches also caused losses to one or more of the ERISA Plans, including losses associated with the imprudent retention or compensation of service providers, improper administration or disposition of Plan assets, additional administrative or litigation expenses borne by the Plans, and other losses resulting from the failure to correct known or reasonably discoverable noncompliance. The nature and amount of such Plan losses are substantially within Defendants' possession and control and will be established through discovery.

146. Separately, Anthem's continuing nonpayment has resulted in the continued withholding of amounts owed to PHI under final and binding IDR determinations and has impaired the rights assigned to PHI by the Patients. Nonpayment of binding federal determinations for emergency healthcare services also threatens the proper administration and continued availability of such services for Plan participants and beneficiaries.

147. The Plan Fiduciary Defendants' breaches are continuing because overdue written determinations remain unpaid; Anthem continues to administer claims for the ERISA Plans; and, upon information and belief, the Plan Fiduciary Defendants have not implemented reasonable corrective measures sufficient to ensure compliant administration of NSA-governed claims.

148. PHI, as assignee of the Patients' rights and causes of action, seeks appropriate equitable relief under 29 U.S.C. § 1132(a)(3) to redress the foregoing violations and enforce ERISA and applicable terms of the ERISA Plans. PHI also seeks, pursuant to 29 U.S.C. § 1132(a)(2), appropriate relief under 29 U.S.C. § 1109 for losses sustained by the affected ERISA Plans as a result of the Plan Fiduciary Defendants' breaches. Relief sought under §§ 1109 and 1132(a)(2) is sought for the benefit of the affected Plans and is not premised on treating PHI's unpaid IDR receivables themselves as losses to the Plans.

149. PHI seeks appropriate relief including, but not limited to:

(a) an injunction requiring the Plan Fiduciary Defendants to take reasonable and prudent corrective measures concerning Anthem's administration of NSA-governed claims, including, where appropriate, limiting, suspending, or terminating Anthem's authority and/or appointing and retaining an administrator that will administer such claims in compliance with ERISA, including the No Surprises Act, and applicable terms of the ERISA Plans;

(b) an injunction requiring the Plan Fiduciary Defendants to adopt and maintain prudent procedures to monitor their appointed administrator's compliance with the NSA's payment obligations and, to the extent appropriate, to provide periodic reporting or certifications sufficient to demonstrate such compliance;

(c) appropriate equitable relief under 29 U.S.C. § 1132(a)(3), including equitable make-whole relief in the nature of surcharge to the extent authorized by law and supported by the evidence, for losses or injuries sustained by participants and beneficiaries whose rights have been assigned to PHI as a result of the Plan Fiduciary Defendants' breaches;

(d) appropriate relief under 29 U.S.C. §§ 1109 and 1132(a)(2), including requiring the Plan Fiduciary Defendants to restore to the affected ERISA Plans losses resulting from their fiduciary breaches, together with any other relief available to the Plans under § 1109;

(e) an accounting and, to the extent supported by the evidence and authorized as equitable relief under ERISA, disgorgement of fees, profits, investment income, or other identifiable benefits obtained by a Defendant or other fiduciary as a result of the fiduciary breaches alleged herein; and

(f) such other equitable relief as the Court deems just and proper.

## VI. JURY TRIAL DEMAND

150. PHI demands a trial by jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, PHI respectfully prays for judgment against Defendants for the following damages and relief:

1. An award of damages in the amount of the outstanding balances owed on the IDR Awards (the "IDR Award Balances");

2. Pre-judgment and post-judgment interest on all amounts awarded, including compensation for the time value of funds wrongfully withheld;

3. Reasonable attorneys' fees and costs of suit, to the extent permitted by law;

4. An award of all additional damages available under applicable law;

5. Entry of an order confirming the IDR Awards pursuant to the Federal Arbitration Act and/or applicable state law;

6. Equitable relief requiring Defendants to pay the outstanding IDR Award Balances;

7. Relief pursuant to 29 U.S.C. §§ 1109, 1132(a)(2), and 1132(a)(3) as set forth above; and

8. Such other and further legal and equitable relief as the Court deems just and proper.

Dated: August 28, 2026

Respectfully submitted,

**PHI HEALTH, LLC**

*/s/ Benjamin Hyman*

Samuel C. Moore
Virginia Bar No. 73233
Benjamin Hyman
Virginia Bar No. 100998
MOORE, CHRISTOFF & SIDDIQUI, PLLC
526 King Street, Suite 506
Alexandria, Virginia 22314
Telephone: (703) 535-7809
Facsimile: (571) 223-5234
*scmoore@moorechristoff.com*
*bhyman@moorechristoff.com*

*Counsel for Plaintiff PHI Health, LLC*