**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| **PHI HEALTH, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**ANTHEM HEALTH PLANS OF VIRGINIA, INC., *et al.*,**<br><br>*Defendants.* | Civil Action No. 3:26-cv-00876-RCY |

**DEFENDANT BRYAN TOOL & MACHINING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS**

Defendant Bryan Tool and Machining, Inc. ("BTM"), hereby submits this Memorandum of Law in Support of its Rule 12(b)(6) Motion to Dismiss filed contemporaneously herewith.

BACKGROUND

This case concerns one of many efforts of Plaintiff, PHI Health, LLC ("PHI"), to seek a court's assistance in getting paid for out-of-network medical services provided by it to patients covered by health insurance policies received as a benefit from public and private employers. The medical services provided by Plaintiff to the subject patients are subject to the Federal No Surprises Act, 42 U.S.C. § 300gg-111 (the "NSA"). Pursuant to the NSA, the amount owed for the medical services at issue were determined through the federal Independent Dispute Resolution (IDR) Process, each patient-specific determination being referred to in Plaintiff's Complaint as an "IDR determination" or "IDR award." In essence, Plaintiff is seeking this Court's assistance in enforcing and collecting the IDR awards that remain unpaid by the insurer, specifically Defendant Anthem Health Plans of Virginia, Inc. ("Anthem"), in the case of BTM's employees and their applicable dependents.

BTM is a Virginia corporation that specializes in precision machining, custom fabrication, and millwright services. BTM provides as a benefit to its employees a health plan (the "Plan") that is fully insured by Anthem. BTM's employee health plan is not self-insured, nor does Plaintiff expressly allege otherwise in its Complaint. Plaintiff does not otherwise allege that BTM is liable for the amounts determined to be owed for Plaintiff's services pursuant to the IDR awards. A review of the IDR determinations that were attached to the Complaint reveals that Plaintiff was deemed a "prevailing party" and Anthem was deemed a "non-prevailing party" on most, if not allow, of the awards. BTM is not deemed or otherwise identified as a "non-prevailing party," or even a party, on any of the IDR determinations. Plaintiff further concedes that Anthem, as insurer or third-party administrator of a self-insured ERISA health plan, is not paying the IDR awards. Compl. ¶¶ 74, 76.

The Plan, which is a welfare benefit plan, is governed by the Federal Employee and Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. ("ERISA"). Under the Plan, which, as previously noted, is not a self-insured plan, Anthem processes and pays claims, negotiates with providers, communicates with providers about benefits, including air ambulance claims, and participates in the IDR Process. BTM does not process claims or participate in any way in the IDR Process, nor would such involvement be necessary given that Anthem has sole liability for coverage provided under the health insurance plan it provided to BTM's employees. Under the NSA, and because the Plan is not self-insured, Anthem is solely liable for the IDR awards that pertain to medical services provided to BTM's employees and their applicable dependents.

Plaintiff operates an emergency medical transport service, more commonly referred to as an "air ambulance" service. Compl. ¶ 53. Plaintiff is considered an out-of-network provider under the Anthem health insurance policy that BTM gives it employees as an employment benefit

through the Plan. With respect to the medical services at issue, Plaintiff has no contractual relationship with either BTM or the Plan, nor does Plaintiff allege to the contrary in its Complaint. Plaintiff alleges that it provided medical services to patients who were BTM employees or their dependents. Compl. ¶ 108. Plaintiff asserts that it received assignments from those patients of their rights to health insurance coverage for the medical services provided by Plaintiff. Compl. ¶ 110.

Before enactment of the NSA, patients who received out-of-network emergency care, including from an air ambulance service, were often "balance billed" for the difference between the provider's charge and the amount the insurer paid. Congress addressed that practice in the NSA. The NSA protects patients from surprise bills and limits their cost-sharing for emergency care and out-of-network air ambulance services to in-network levels. 42 U.S.C. §§ 300gg-111, 300gg-112. The NSA also took patients out of payment disputes. The amount owed by insured patients for out-of-network medical services is resolved through the IDR Process, with the insurer, including a self-insurer that may use a third-party administrator, ultimately being liable for any IDR determination that may be made. Plaintiff recognizes the foregoing in Paragraph 2 of its Complaint wherein it states that the arbitrator in the IDR Process "issues a written determination selecting the amount due to the provider by a patient's commercial health insurer." Compl. ¶ 2. In a footnote to Paragraph 1 of the Complaint, Plaintiff defined "commercial health insurer" to include "self-insured group health plans," but not group health insurance plans that are not self-insured, such as the Plan maintained by BTM. Compl. ¶ 1.

In its Complaint, Plaintiff named BTM as a defendant, along with twenty-five (25) other defendants. Many of the defendants are private employers like BTM who provide health insurance as a benefit to their respective employees and their dependents. Plaintiff asserts five (5) claims in its Complaint, all of which were asserted against Defendant BTM. Those claims are as follows:

1. Count I: Confirmation of IDR Awards under the NSA.
2. Count II: Confirmation of the IDR Awards under the Federal Arbitration Act.
3. Count III: Confirmation of the IDR Awards under the Virginia Uniform Arbitration Act.
4. Count IV: Claim for Enforcement of NSA under ERISA and Payment of Plan Benefits.
5. Count V: Breach of ERISA Fiduciary Duties.

## STANDARD OF REVIEW

For the purposes of a 12(b)(6) motion, the well pleaded allegations contained in a Complaint must be taken as true, and any reasonable inferences must be made in favor of the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). A Rule 12(b)(6) motion does not go to the merits of a claim or evaluate the facts of a case, but is simply an assessment of a claim's sufficiency under Rule 8(a) of the Federal Rules of Civil Procedure. *Id*. at 245. For a Complaint to be considered sufficient, detailed factual allegations are not necessary; however, "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Likewise, "naked assertions devoid of further factual enhancement" are not sufficient. *Id*. The court need not accept unwarranted inferences, unreasonable conclusions, or arguments. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Additionally, the facts included in a Complaint must raise a right to relief. *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555–56 (2007). These facts do not need to constitute a fully developed argument, but should be conceivable, rather than simply plausible. *Id.* at 570.

In deciding whether a complaint will survive a motion to dismiss, a court must evaluate the complaint in its entirety, including documents attached or incorporated into the complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also Butters v. James Madison Univ.*, 145 F. Supp. 3d 610, 617 (W.D. Va. 2015). A court may consider official

public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint, as long as there is no dispute as to the authenticity of the documents. *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396 (4th Cir. 2006). Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(a). "Indeed, in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails." *Fayetteville Invests. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (citing 2A Moore's Federal Practice, para. 10.06, p. 10–24).

## ARGUMENT

### I. Count I Fails Because The NSA Does Not Create a Private Right of Action

Count I asks this Court to confirm the judgments obtained through arbitration proceedings that have been determined in accordance with the NSA. Compl. ¶¶ 80–92. The NSA does not contain an express provision entitling Plaintiff to such relief, and this Court should not impliedly impose such relief where it has not been clearly statutorily granted.

#### *a. Private Right of Action is not Provided Explicitly or Implicitly*

The Supreme Court in *Alexander v. Sandoval* is clear, "private rights of action to enforce federal law must be created by Congress." 532 U.S. 275, 286 (2001). Here, Plaintiff is asserting that this Court has the ability to enforce the IDR awards against the Defendants, including Defendant BTM, with no statutory authority to be found in the NSA to arm this Court with the ability to do so. In fact, it was confirmed by the Fifth Circuit in *Guardian Flight, LLC v. Health Care Service Corporation* that "the NSA contains no express right of action to enforce or confirm an IDR award." 140 F.4th 271, 275 (5th Cir. 2005). Based on this cut and dry analysis, the Court

here has no authority to enforce the IDR awards against the Defendants, including Defendant BTM.

It is clear that there is no express enforcement right of action created by the NSA. It is equally as clear that there is no implied right of action. Implied rights of action are "disfavored and will not be found in the absence of clear legislative intent." *Prousalis v. Moore*, 751 F.3d 272, 278 (4th Cir. 2014). Even in the circumstance that an implied right of action looks favorable or even advances public policy, without evidence of Congress' intent to create such right of action, no such right shall exist and courts are also disallowed from creating one. *UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 699 (9th Cir. 2018).

Under the NSA, Congress barred judicial review of IDR determinations except for vacatur. The NSA provides that an IDR determination "shall not be subject to judicial review," except for limited circumstances dealing with rights of action that have no weight to the case before the court. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); 9 U.S.C. § 10. The only limited judicial review action that is authorized by the NSA is the text permitting a suit that would vacate an award on the enumerated Federal Arbitration Act (FAA) grounds, and it permits nothing else. *Id.* Other forms of judicial review, such as confirming or enforcing an IDR award, are barred. *Guardian Flight*, 140 F.4th at 276.

To circumvent the myriad of precedent that is damaging to Plaintiff's position, Plaintiff attempts to avoid the bar the NSA has on such suits by labeling its claim as "judicial enforcement" as opposed to "judicial review." Compl. ¶ 84. Recasting the claim does not alter the substance. Changing the label does not override the clear, unambiguous statutory text. The Complaint is asking the Court to determine the validity and amount of a money judgment which is the exact kind of judicial action Congress limited to vacatur. "[N]early every court that has considered [this

issue]—including the Fifth Circuit and multiple district courts across the country—has declined to find that the NSA creates either an express or implied private right of action." *PHI Health, LLC v. Health Care Serv. Corp.*, 2026 WL 1802985, at *6 (N.D. Ill. June 23, 2026). "The preclusion of 'judicial review,' as used in the NSA, necessarily encompasses preclusion of a judicial enforcement action akin to that provided in Section 9 of the FAA." *Id.* at *13.

Congress knew how to authorize enforcement actions when it wished to do so. The NSA incorporates FAA § 10 vacatur grounds but not § 9, which authorizes the courts to confirm awards. 42 U.S.C. § 300gg; 42 U.S.C. § 300gg-111(c); 9 U.S.C. § 9–10. Elsewhere, Congress expressly provides that arbitration awards "may be enforced pursuant to sections 9 through 13" of the FAA. 5 U.S.C. § 580(c). The decision not to do so here is deliberate.

*b. An Administrative Remedy is Provided*

Now that it has been established that Congress did not specifically allow judicial review, including judicial enforcement, in this context under the NSA either explicitly or implicitly, it is important to discuss that Congress did still pave a path through administrative enforcement for these types of actions. The NSA vests the U.S. Department of Health and Human Services (HHS) with rulemaking oversight authority over the IDR process and oversight authority over the IDR Process. 42 U.S.C. § 300gg-111(a)(2), (c)(2)-(4), 42 U.S.C. § 300gg-22(b)(2)(A). This authority has not gone unused, the Centers for Medicare & Medicaid Services (CMS) has sought out provider complaints, compelled payment of IDR awards, and hosts an online portal for the purpose of receiving complaints about the IDR process. *Guardian Flight*, 140 F.4th at 277.

At Paragraph 86 of the Complaint, Plaintiff asserts that no agency can compel payment of IDR awards. Compl. ¶ 86. The Fifth Circuit concluded that this scheme "suggests that Congress intended to preclude" private enforcement and that Congress "may have judged it better to have

an administrative enforcement mechanism handle most award disputes instead of throwing open the floodgates of litigation." *Id.* at 277. The Second Circuit agreed that Congress "created in the NSA a comprehensive regulatory framework for setting up and enforcing the IDR process," which "makes clear that Congress did not intend to authorize private lawsuits to enforce IDR awards." *East Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, 2026 WL 2751786, at *11, 14 (2nd Cir. Sept. 17, 2026).

*c. A Judgment Cannot Bind a Nonparty*

Even if the Court were to accept the contrary and determine that Plaintiff is allowed to pursue a private right of action for the IDR award enforcement, Defendant BTM is not a proper defendant to assert this action against. In its Complaint, Plaintiff has taken issue with Anthem's refusal to pay IDR awards. The relationship between BTM and Anthem is one in which BTM's employer sponsored health care plan is fully insured by Anthem. BTM has no control over insurance coverage decisions because Anthem is responsible for underwriting and administering the medical benefits it contractually provides to its insureds. Anthem has complete and final authority on accepting or denying claims for coverage. BTM has no rights in the instance it may disagree with Anthem's decision and wish to override that decision. Here, not only was BTM not a party to the underlying IDR Process, it also exerted no control or even had the authority to exert control over Anthem's decisions throughout the IDR Process. Contrast this scheme with a self-insured defendant who still maintains some level of control over the claims it is able to approve. A self-insured defendant maintains the ultimate authority as the plan administrator, whereas employers such as BTM exert no such authority. This scheme only delineates the relationship between Plaintiff and BTM. Simply put, and as to BTM employees and their dependents that may

have received medical services from Plaintiff, BTM is not the party that is responsible for paying any IDR award that is enforceable.

Not only is there an overlying scheme that separates the relationship of Plaintiff and BTM, but BTM was certainly not a party to nor had any dealings with Plaintiff itself or the IDR Process. The text of the NSA clearly states that IDR payment determinations are effective only "upon the parties involved" in the IDR process. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I). Therefore, the NSA payment determinations are not binding on non-parties and non-participants. *Id.* Determining otherwise would be contrary to public policy. "[A] litigant is not bound by a judgment to which [they] were not a party." *Taylor v Sturgell*, 553 U.S. 880, 898 (2008). Therefore, even in the instance Plaintiff has the ability to enforce the IDR awards, the action would not lie against BTM because it was not a party to the IDR determination.

## II. Counts II and III – Plaintiff Cannot Enforce IDR Awards Through Federal or State Arbitration Laws

Counts II and III of the Complaint ask this Court to confirm the IDR determinations discussed in Count I under the FAA and the VUAA. Compl. ¶¶ 94-99, 101-106. Neither are a legitimate course of action because as already discussed, Congress withheld a judicial enforcement mechanism from the NSA, and both statutes apply only where parties have agreed to arbitrate.

### *a. Federal Arbitration Does Not Supply a Cause of Action*

The NSA provides that an IDR determination "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). Congress utilized the FAA's vacatur grounds yet omitted its confirmation provision. 9 U.S.C. § 9. "When Congress omits from a statute a provision found in similar statutes, the omission is typically thought deliberate." *Turtle Island Restoration Network v. Evans*, 284 F.3d 1282, 1296 (Fed Cir. 2002). The notion that Congress knows how to incorporate

§ 9 when it intends to have been accepted by multiple courts. *Guardian Flight*, 140 F.4th at 275–76; *East Coast Advanced Plastic Surgery*, 2026 WL 2751786 at *14; *T.V. Seshan, M.D., P.C. v. Aetna, Inc.*, 2026 WL 867151, at *7–9 (S.D.N.Y. Mar. 30, 2026).

Plaintiff counters this accepted assertion by arguing that the reference to 9 U.S.C § 10 in the NSA which shows Congress meant IDR determinations to be treated as arbitration awards, except the opposite is true. Compl. ¶¶ 96, 103. Congress chose which parts would apply and § 9 was not among them. 42 U.S.C. § 300gg-111. Plaintiff's argument that confirmation is "ministerial" rather than "judicial review," is needlessly repetitive of Count I and fails for the same reasons stated in Section I. Compl. ¶ 99.

An action under the FAA "is simply an action to enforce the arbitration provision of the parties' contract." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 931 (9th Cir. 2009). Here, the IDR does not create a process where none existed. Section 9 only applies in circumstances where "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award" and "specify the court." 9 U.S.C. § 9; *see also* 9 U.S.C. §§ 2, 4 (referring to "written provision," "agreement in writing," and "written agreement"). The Complaint does not allege there is a written agreement between Plaintiff and BTM and certainly no agreement that provides for an entry of judgment or specifies a court. Compl. ¶¶ 94-99, 101-106. Any indirect involvement by the Plan in the IDR Process through its employee healthcare provider does not mean the Plan has contracted to arbitrate. Rather, it simply means the Plan is complying with the appropriate regulations. Complying with regulations does not create a contractual obligation and holding otherwise would be contrary to legal standards. "Defendants agreed to binding dispute resolution" is a legal conclusion the Court need not accept. *Iqbal*, 566 U.S. at 678. Plaintiff also

pleads it collectively against other collective defendants, without identifying any offer or acceptance specific to BTM.

*b. State Arbitration Does Not Supply a Cause of Action*

To the extent that the IDR determinations at issue may be subject to Virginia's Uniform Arbitration Act, Va. Code § 8.01-581.01, *et seq*., the Act does not grant this Court authority to confirm the award or enter judgment on the award as to or against BTM. BTM was not a party to the IDR Process and any arbitration decision rendered thereunder. Furthermore, Virginia courts "rely on the general 'law of contracts' to determine whether a valid and enforceable agreement to arbitrate exists." *Boyle v. Anderson*, 301 Va. 52, 60 n.2 (2022). The VUAA provides that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable." Va. Code § 8.01-581.01. Where a party seeks to compel arbitration, the VUAA requires a showing of such an agreement. Va. Code § 8.01-581.02.

As previously noted, the Complaint alleges no agreement between Plaintiff and BTM to arbitrate the underlying payment dispute. Compl. ¶¶ 100-106. The IDR Process under the NSA does not supply that missing contractual agreement. 42 U.S.C. § 300gg-111. Furthermore, courts addressing NSA IDR awards have recognized that such awards arise from a federally mandated statutory process rather than from an agreement to arbitrate between the provider and payer. *See, e.g.*, *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 227 (D. Conn. 2025) (distinguishing NSA IDR awards, which arise "in the absence of any arbitration agreement," from ordinary arbitration awards).

In instances where there is no agreement to arbitrate a particular dispute, express or implied, it is contrary to logic to require a party to arbitrate a particular dispute or to be subjected

to the requirements of the VUAA that apply to judicial review of an award. *Church Mut. Ins. Co., v. Ephesus Richmond Seventh-Day Adventist Church*, 84 Va. App. 371, 385 (2025). Therefore, the VUAA's confirmation provision that directs a court to confirm an arbitration award does not apply to BMT. Va. Code § 8.01-581.09. For the same reason, the section authorizing entry of a judgment on an arbitration award does not apply to BTM. Va. Code § 8.01-581.012.

Neither of the Arizona trial court orders cited in Paragraph 106 of the Complaint establish otherwise. Compl. ¶ 106. Those decisions were decided under Arizona law as it relates to the enforcement to arbitrate and are therefore not binding on this court. *PHI Health, LLC v. Marpai Admr'rs, LLC*, No. CV 2025-014762, at 3-6 (Ariz. Super. Ct. Maricopa Cnty. June 2, 2026); *PHI Health, LLC v. Marpai Admr'rs, LLC,* No. CV 2025-035807 (Ariz. Super. Ct. Maricopa Cnty. July 1, 2026). In particular, *FHMC LLC v. Blue Cross & Blue Shield of Arizona, Inc.* reached a conclusion consistent with the Fifth Circuit's decision in *Guardian Flight*, dismissing a claim that the NSA created an implied right of action because such a right was inconsistent with the statutory scheme and would circumvent the Act's limited provision for judicial review. 2026 WL 1461989 *8–9 (Ariz. Dist. Ct. April 3, 2024). The Court did not allow a case to proceed that asserted the NSA IDR statutory scheme constitutes an arbitration award subject to enforcement under a state arbitration statute. *Id.*

## III. Counts IV and V – Plaintiff Lacks any Basis to Enforce the IDR Awards under ERISA

Plaintiff is a healthcare provider and has no independent standing to sue under ERISA. *W. Va. Reg'l Emergency Physicians, LLC v. Anthem Health Plans of Va., Inc.*, No. 3:23-cv-781, 2024 WL 3497920, at *11–12 (E.D. Va. July 22, 2024). In fact, ERISA's design limits those who may sue to "participants, beneficiaries, or fiduciaries." *Brown v. Sikora & Assocs.*, 311 Fed. Appx. 568, 570 (4th Cir. 2008) (quoting 29 U.S.C. § 1132(a)). The only instance where a provider obtains

standing to sue in these circumstances is when the provider "stands in the shoes" of the assignor. *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 729–30 (5th Cir. 2010). Plaintiff contends that it stands in the shoes of its patients pursuant to assignments. However, the patients could not have brought the claims Plaintiff asserts. Plaintiff seeks payment of amounts allegedly owed under IDR determinations, but the NSA directs these payments to the nonparticipating provider, not to the beneficiary. *See* 29 U.S.C. § 1185f(b)(6). The patients could not have recovered the IDR awards themselves and had no financial obligation to satisfy them. Plaintiff cannot obtain an assignment of a right the patients never possessed. *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 877–78 (9th Cir. 2017).

On the issue of standing, there has been no injury suffered by the patient that is derivative of the alleged nonpayment. The NSA protects patient-beneficiaries from these kinds of liabilities that can arise from out-of-network air-ambulance charges, and the IDR Process only concerns the amount the patient's insurer must pay the provider. *See* 42 U.S.C. § 300gg-135; Requirements Related to Surprise Billing; Part I, 86 Fed. Reg. 36,872 (July 13, 2021). Considering the policy choice behind enacting the NSA, when disputes arise from the provider, the IDR process is how it should be resolved, rather than a participant's claims and appeals process. 86 Fed. Reg. at 36,901. This results in the patient still receiving the same benefits and having the same payment obligations, regardless of whether the IDR award is paid. *See id.* Therefore, the patients in the dispute before this Court have not suffered a concrete injury that can be derivatively asserted by Plaintiff.

On this point, this assertion is further confirmed in *Guardian Flight*, a Fifth Circuit case that is substantially similar to the one before this Court, that the provider lacked standing under Article III of the United States Constitution because the beneficiaries had suffered no injury.

*Guardian Flight*, 140 F.4th at 278. This design protects patient-beneficiaries from liability on disputed charges, especially when the IDR dispute only concerns the amount owed to the provider. *Id.* at 277–78. When the assignor has suffered no injury, then the assignee did not suffer an injury either. Another case on point here, S*pecialtycare, Incorporated v. Umr, Incorporated*, had the same outcome under nearly identical circumstances and was decided by the Delaware District Court. No. 24-1396, 2026 U.S. Dist. LEXIS 34914 *13–16 (Dist. Del. Feb. 20, 2026).

*Thole v. U.S. Bank N.A.* further confirms the points being made. 590 U.S. 538, 541 (2020). Here, participants received the same benefits to which they were entitled, regardless of the outcome. *Id.* The same applies here. Patients' receipt of benefits and their financial obligations are unaffected by whether the ultimate insurers pay Plaintiff's IDR awards. Furthermore, BTM is not even the party responsible for paying the IDR award because it had a fully insured health plan with Anthem, adding another layer of removal from the current dispute. In short, BTM's Plan is not the ultimate insurer with respect to the IDR awards that pertain to Plaintiff's serviced provided to its employees and their applicable dependents. Therefore, there is no Article III standing that Plaintiff can assert through assignments from patients that did not suffer an injury in the context of this dispute.

The same defects are present in Plaintiff's reasoning for Count V of the Complaint. Plaintiff alleges that certain Defendants, including BTM, breached their fiduciary duties by failing to monitor Anthem's alleged nonpayment of IDR awards. In turn, Plaintiff seeks relief under 29 U.S.C. §§ 1109, 1132(a)(2), and 1132(a)(3). Compl. ¶¶ 126-49. But § 1132(a)(2) authorizes relief for losses to the Plan, not individualized recovery by a provider, and § 1132(a)(3) likewise does not permit a plaintiff to circumvent ERISA's standing requirements by recasting a claim for payment of its own receivables as equitable relief. *See Massachusetts Mut. Life Ins. Co. v. Russell*,

473 U.S. 134, 140 (1985); 29 U.S.C. § 1132(a)(2–3). To the extent Plaintiff seeks recovery for alleged losses to BTM's Plan, Plaintiff cannot convert its status as an assignee of its patients into standing to assert claims belonging to the Plan itself. Furthermore, Plaintiff alleges "upon information and belief" that certain ERISA Plans incurred losses, Complaint ¶ 145, but there is no allegation that BTM's Plan in particular suffered any such losses, it being noted that any such losses seem unfathomable under the circumstances.

Accordingly, Plaintiff lacks both statutory and Constitutional Article III standing to assert Counts IV and V, and those counts should be dismissed.

CONCLUSION

For the foregoing reasons, the Complaint fails to state any claim upon which relief can be granted as to Defendant Bryan Tools and Machining, Inc. Accordingly, said Defendant respectfully requests this Court to enter an Order that grants its Motion to Dismiss and dismisses the Complaint with prejudice as to it.

BRYAN TOOL AND MACHINING, INC.
By Counsel

/s/ Kevin M. Rose
KEVIN M. ROSE (VSB No. 35930)
WILLIAM E. SHMIDHEISER, III (VSB No. 19047)
BotkinRose PLC
3190 Peoples Drive
Harrisonburg, VA 22801
Telephone: (540) 437-0019
Fax: (540) 437-0022
Email: krose@botkinrose.com
Email: bshmidheiser@botkinrose.com
*Counsel for Defendant, Bryan Tool and Machining, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on **October 13th, 2026**, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send via email a copy of such filing to all parties registered to receive electronic notice in this case.

/s/ Kevin M. Rose________________

KEVIN M. ROSE (VSB No. 35930)
BotkinRose PLC
3190 Peoples Drive
Harrisonburg, VA 22801
Telephone: (540) 437-0019
Fax: (540) 437-0022
Email: krose@botkinrose.com
Email: bshmidheiser@botkinrose.com
*Counsel for Defendant, Bryan Tool and Machining, Inc.*