UNISON™
RISK ADVISORS

# No Surprises Act- Anthem's Process for Independent Dispute Resolution (IDR)

Anthem is asking employers to decide how they would like Anthem to handle certain Independent Dispute Resolution (IDR) awards under the No Surprises Act (NSA). Specifically, Anthem seeks direction on whether it should continue its current practice of refusing to pay IDR awards that it believes were improperly submitted to the federal IDR process or instead pay those awards despite its view that the claims were not eligible for IDR.

## No Surprises Act (NSA)

The No Surprises Act (NSA) applies to three types of claims: 1) emergency services; 2) services provided by an out-of-network provider at an in-network facility; and 3) air ambulance services. For claims subject to the NSA, participants generally cannot be required to pay more than the applicable in-network cost-sharing amount, and out-of-network providers generally cannot balance bill participants.

If the provider is out-of-network, the TPA must make an initial payment, often referred to as the "qualifying payment amount" or QPA, to the provider within 30 business days of the claim submission. That initial payment then triggers a 30-day negotiation period where the TPA and provider can try to come to an agreement on an acceptable payment amount. If they cannot agree by the end of the negotiation period, either party (but usually the provider) can initiate the Independent Dispute Resolution (IDR) process.

## Independent Dispute Resolution (IDR)

IDR is a form of baseball-style arbitration in which each party submits a proposed payment amount along with supporting information. The arbitrator must select one proposal and may not "split the difference" or calculate their own amount. The arbitrator's decision is final and binding, subject only to limited judicial review.

Providers reportedly prevail in approximately 85-90% of IDR disputes. Because the process is winner-take-all, the resulting payment often significantly exceeds the amount initially offered by the TPA.

## Claims Not Subject to IDR

Not every NSA claim is subject to the federal IDR process. For example, the IDR request may be untimely; state IDR rules may apply in some cases; IDR is only intended to resolve payment amounts, not adjudicate disputes over coverage and plan exclusions; etc.

TPAs may challenge whether a claim is eligible for the federal IDR process. The arbitrator must decide that threshold issue. However, claims frequently proceed through IDR despite such objections, either because the arbitrator rejects the challenge or does not specifically address it before issuing an award.

According to Anthem, its historical practice has been to decline payment of IDR awards when it continues to believe that the underlying dispute was not eligible for federal IDR. In those cases, the provider must decide whether to abandon the claim, negotiate with Anthem, pursue litigation, or file a complaint with the Department of Labor.

Refusing to pay an IDR award carries litigation and enforcement risk. A court or regulatory agency could ultimately uphold the award, leaving the plan responsible not only for the underlying claim amount but also potentially for attorneys' fees and other costs associated with defending the dispute. While ERISA remedies are often limited to benefits due, additional liability could arise if a court determines that the refusal to pay constituted a breach of fiduciary duty.

## Employer Decision Point

Anthem is now asking, when faced with an IDR award on a claim that Anthem believes is not subject to IDR, what approach does the employer wish to take:

- ***Pay the IDR Award.*** Pay the IDR award, even when Anthem believes the dispute was not eligible for IDR. Anthem has indicated that this election would apply not only to future awards but also to previously unpaid awards that remain outstanding.
- ***Continue Current Practice.*** Continue Anthem's current practice of declining to pay awards that it believes were improperly submitted to IDR. This preserves Anthem's position but creates the possibility that providers may later seek enforcement through litigation or regulatory action.

## Factors To Consider

There is no one right answer appropriate for all employers. Some factors the employer may want to consider before making a decision:

***IDR Volumes and Outcome.***

- How many NSA claims has the plan experienced in recent years?
- How many of NSA claims proceeded to IDR?

***Financial Impact.***

- How many IDR disputes resulted in provider awards?
- What was the total value of those awards?
- How did the awards compare to Anthem's original payment amounts and IDR offers?

UNISON™
RISK ADVISORS

***Eligibility Disputes.***

- How often has Anthem challenged IDR eligibility?
- How many awards were subsequently left unpaid?
- What ultimately happened in those cases (settlement, abandonment, litigation, or regulatory complaint)?

***Stop-Loss Considerations.***

- If unpaid awards are enforced years later, will stop-loss coverage reimburse the plan?
- Could the carrier deny reimbursement because the claim was not paid when the award was originally issued?

If the employer has had too few IDR claims for its own experience to be meaningful, it may be useful to ask Anthem for comparable information from its broader book of business, including how frequently Anthem challenges IDR eligibility and what happens when it declines to pay an award.

Anthem may not be willing to share all of this information, but these are the types of facts that would be relevant in making an informed decision.

## Overall NSA/IDR Administration

Employers may also wish to understand Anthem's broader NSA and IDR administration practices. IDR outcomes can be influenced not only by the merits of a claim but also by how effectively the TPA manages the process. For example, employers may want to understand the controls Anthem has in place to ensure timely responses to IDR proceedings, submission of reasonable and defensible payment offers, and adequate support for those offers. We have seen situations involving other TPAs where procedural deficiencies contributed to provider victories, either through default or because the arbitrator lacked sufficient information to rule otherwise. We are not suggesting that Anthem engages in those practices; rather, understanding Anthem's process may help employers assess the significance of the election it is requesting.